Eugene M. GAERTNER, James F. Sommers
Family Estate, a Trust, James F. Sommers,
Craig Tomera and Michelle Tomera, Plaintiffs-
Respondents,

v.

880 CORPORATION, Defendant-Appellant,

NEWPORT CONDOMINIUM ASSOCIATION,
John W. Bihlmire, Sr., Harry J. Willett, Cheryl
M. Willett, Concord-Wisconsin, Inc., and Pioneer
Savings and Loan Association, Defendants.

Court of Appeals

*No. 85–0653. Submitted on briefs February 6, 1986.—*
*Decided April 23, 1986.*

(Also reported in 389 N.W.2d 59.)

For the defendants-appellants, the cause was submitted on the briefs of *Irvin B. Charne, F. Thomas Olson* of *Charne, Glassner, Tehan, Clancy & Taitelman* of Milwaukee.

For the plaintiffs-respondents, the cause was submitted on the briefs of *William R. Steinmetz, Bruce T. Block, Dean A. Strang* of *Reinhart, Boerner, Van Deuren, Norris & Rieselbach* of Milwaukee.

Before Scott, C.J., Brown, P.J., and Nettesheim, J.

SCOTT, C.J.   The principal challenge on this appeal is to the propriety of the trial court's grant of a default judgment against 880 Corporation (880) for failure to appear at a scheduling conference. 880 contends that the trial court abused its discretion by granting a default judgment, alleges that certain notice requirements were not met, claims that the trial court erred by striking 880's answer, and challenges the damage award. We conclude that the record does not provide sufficient foundation to support the damage award; therefore, we reverse as to damages and remand for a

new hearing. We affirm the trial court as to all other issues.

880 was the developer of a condominium project in Lake Geneva called Newport Condominium Association. John W. Bihlmire (Bihlmire) was president of 880.[1] The plaintiffs, Gaertner, et al., were purchasers of units in the condominium and brought an action against 880 alleging that 880 breached its purchase contracts with the plaintiffs by failing to: (1) complete construction and/or renovation of the common elements of the building in the condominium; (2) provide functional plumbing and heating within the plaintiffs' units; (3) provide storage areas; (4) construct a parking garage and deliver parking spaces to the plaintiffs; (5) construct an outdoor swimming pool; and (6) construct a pier and provide boat slips to the plaintiffs.[2]

On September 27, 1983, the trial court filed a "Scheduling Conference Memorandum and Order" directing the parties to appear at a scheduling conference set for December 5, 1983. The record shows that copies of the order were to be provided to all attorneys. By motion filed October 27, 1983, counsel for 880 and Bihlmire moved to withdraw as counsel; in an order filed November 22, 1983, the motion was granted. The order further provided that "this order will not affect any presently scheduled proceedings including the scheduling conference in this matter which is presently set for December 5, 1983, at 9:15 a.m. before the court commissioner of this court."

---

[1] John W. Bihlmire is not a party on appeal.

[2] The plaintiffs' amended complaint alleged four causes of action. In early 1985, the parties stipulated to the dismissal without prejudice of the first, third and fourth causes of action.

Both 880 and Bihlmire failed to appear at the scheduling conference on December 5. The conference was held at 9:15 a.m., and at approximately 10:30 a.m. one of the plaintiffs' attorneys moved for a default judgment against 880.[3] The trial court granted the motion reserving the determination of damages.

On December 14, 1983, the plaintiffs filed a "Notice of Motion and Motion" for default judgment. On December 20, 1983, the trial court filed an order striking 880 and Bihlmire's answer[4] and granting a default judgment "with a hearing to be held . . . solely to establish the amount of plaintiff's damages."

On December 27, 1983, 880 and Bihlmire filed a motion for reconsideration of the default judgment. The trial court denied the motion and a hearing on damages was held.[5] On February 3, 1984, the trial court filed an "Interlocutory Judgment" awarding $280,000 to the plaintiffs. 880 appeals.

880 contends that the trial court abused its discretion by directing the entry of a default judgment as a

---

[3] The plaintiffs moved for a default judgment against 880 on their second cause of action and against Bihlmire on their third cause of action.

[4] 880 contends that the trial court erred by striking its answer because no request was made to strike the answer and striking the answer denied 880 due process. Because we affirm the trial court's grant of the default judgment, we need not decide this issue. *See Gross v. Hoffman,* 227 Wis. 296, 300, 277 N.W. 663, 665 (1938).

[5] Judge James L. Carlson was assigned the motion for reconsideration on rotation. He stated that he thought the motion would be more appropriately decided by Judge John J. Byrnes because Judge Byrnes made the initial decision on default, thus proceedings on the motion for reconsideration were held before Judge Byrnes. Upon the completion of the motion hearing, a hearing on damages was held before Judge Carlson.

result of 880's failure to appear at the scheduling conference. While 880 recognizes that it was within the trial court's power to grant a default judgment, it claims that to do so was unduly harsh and bore no reasonable relationship to the nature of 880's offense. Furthermore, 880 claims that the trial court should have relieved it from the default judgment under sec. 806.07(1), Stats., because neither Bihlmire nor 880 received written notice of the scheduling conference.

■■■■

880 does not dispute that the trial court had the statutory authority, exercisable in its sound discretion, to render a default judgment against 880 for failure to appear at the scheduling conference.[6] *See Carlson Heating, Inc. v. Onchuck,* 104 Wis. 2d 175, 181, 311 N.W.2d 673, 676 (Ct. App. 1981); *Kranzush v. Badger State Mutual Casualty Co.,* 103 Wis. 2d 56, 83, 307 N.W.2d 256, 270 (1981). Upon appeal, we will not set aside a discretionary order unless it is apparent that it was exercised arbitrarily or on the basis of completely irrelevant factors. *Carlson* at 181, 311 N.W.2d

---

[6] The trial court's authority to grant a default judgment is derived from secs. 802.10(3)(d), 805.03 and 804.12(2)(a), Stats. Section 802.10(3)(d) provides that "[v]iolation of a scheduling order is subject to s. 805.03." Section 805.03 provides:

> [F]or failure of any party . . . to obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a).

Section 804.12(2)(a)3 provides that the court may make an order:

> [S]triking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party.

at 676. Even if the evidence favoring a default judgment is slight, we will affirm unless it was impossible for the trial court to grant the judgment in the exercise of its discretion. *Martin v. Griffin,* 117 Wis. 2d 438, 442, 344 N.W.2d 206, 209 (Ct. App. 1984).

The exercise of discretion requires a record of the trial court's reasoned application of the appropriate legal standard to the relevant facts in the case. *Id.* Upon the failure of the trial court to record such reasoning, an appellate court may nevertheless examine the record to determine whether the facts support the trial court's decision. *Id.* at 443, 344 N.W.2d at 209. *See also Hedtcke v. Sentry Insurance Co.,* 109 Wis. 2d 461, 471, 326 N.W.2d 727, 732 (1982).

Upon our review of the default judgment in this case, we are mindful, on one hand, that the law views default judgments with disfavor and prefers, whenever reasonably possible, to afford litigants a day in court, and, on the other hand, of the interests in prompt adjudication and "the probability that a policy which excused or tolerated a lawyer's neglect would foster delay in litigation" and lower the quality of legal representation.[7] *See Hedtcke* at 469, 326 N.W.2d at 731, quoting *Dugenske v. Dugenske,* 80 Wis. 2d 64, 70, 257 N.W.2d 865, 868 (1977).

At the motion hearing for default judgment held on December 5, the trial court granted the motion based upon its finding that notice of the scheduling conference "was given to all persons to be here, and by virtue of the non-appearance of 880 Corporation—both 880 Corporation and Bihlmire personally . . . ."

---

[7] It is undisputed that Bihlmire has had extensive involvement with the legal system. For this reason, we do not hesitate to hold him and 880 to this standard.

■

Our review of the record shows that on September 27, 1983, the trial judge entered a "Scheduling Conference Memorandum and Order" specifically requiring the parties' attendance at the December 5 scheduling conference. The record shows that a copy of this document was sent to 880's counsel. Later, when 880's attorneys withdrew as counsel, a copy of the order granting the motion, which contained an express condition that the December 5 scheduling conference would go forward as planned, was mailed to 880. Based upon this record, we conclude that the trial court did not abuse its discretion by granting a default judgment.

At the hearing on 880's motion for reconsideration, 880 attempted to show, as a "clear and justifiable excuse for the [failure to appear at the scheduling conference]," *see Trispel v. Haefer,* 89 Wis. 2d 725, 733, 279 N.W.2d 242, 245 (1979), that relief from the default judgment was warranted due to mistake, inadvertence, surprise or excusable neglect, *see* sec. 806.07(1)(a), Stats. *See also Oostburg State Bank v. United Savings & Loan Association,* 125 Wis. 2d 224, 239, 372 N.W.2d 471, 478 (Ct. App. 1985). In an affidavit accompanying the motion, Bihlmire averred that neither he nor 880 received written notice of the scheduling conference as required under sec. 802.10(3)(a), Stats.[8] Bihlmire's affidavit stated:

---

[8] Section 802.10(3)(a), Stats., relating to scheduling conferences, provides:

The court may on its own motion or upon motion of a party . . . call a scheduling conference upon at least 10 days written notice by mail to all attorneys of record and to all parties who have appeared of record and are not represented by counsel.

Mail addressed to John Bihlmire or 880 Corporation at 880 Lake Shore Drive, Lake Geneva, Wisconsin is held by the post office until it is either picked up by John Bihlmire or by someone else who asks for mail addressed to 880 Lake Shore Drive. From time to time mail addressed to John Bihlmire or others at 880 Lake Shore Drive has been given to other parties who advise the post office officials that they will drop off the mail at that address.

The determination of whether to vacate a default judgment is within the sound discretion of the trial court. *Dugenske,* 80 Wis. 2d at 68, 257 N.W.2d at 867. On appeal, the trial court's decision will not be disturbed unless there has been a clear abuse of discretion. *Id.*

At the hearing on 880's motion for reconsideration, the trial court recognized that Bihlmire "had over two months notice of this scheduling conference going to be held December 5, 1983, and he knew or should have known that his presence at that conference was expected by this Court."[9] The trial court noted that 880

---

[9] We note that during the pendency of this litigation, two documents signed by the trial judge and entitled "Scheduling Order and Trial Date" were sent to counsel and contained a provision stating:

Failure to comply with the terms of this Order shall be considered cause for imposing sanctions which may include dismissal, default judgment, contempt, money terms, orders limiting or barring the presentation of testimony or introduction of evidence at trial, or a combination thereof, or any such added and further sanctions as the Court may deem appropriate.

We also note that at the hearing on 880's motion for reconsideration, counsel for 880 claimed the attorney-client privilege and re-

knew that its counsel was withdrawing and knew or should have known that a motion for withdrawal was coming on for hearing in November and 880 elected not to appear. The trial court considered that the court order permitting counsel to withdraw from representing 880 was granted with the express understanding that the scheduling conference would go forward on December 5 and stated that 880 elected not to appear at the December 5 conference in direct violation of the order. The trial court concluded that in view of the amount involved in the lawsuit, the number of litigants and the number of attorneys involved, Bihlmire and 880's conduct was egregious.

Parties are deemed bound by the acts of their attorneys and are considered to have "notice of all facts, notice of which can be charged upon the attorney." *Link v. Wabash Railroad Co.,* 370 U.S. 626, 634, *reh'g denied,* 371 U.S. 873 (1962) (citation omitted). Here, the record shows that counsel for 880 had notice of the scheduling conference set for December 5; consequently, 880 is considered to have had notice of the scheduling conference. While we recognize that 880 took prompt action in filing a motion for reconsideration upon the entry of the default judgment against it, such action does not eliminate the requirement that a dilatory party show a clear and justifiable excuse for its initial failure to appear. *See Hedtcke* at 475, 326 N.W.2d at 734. Based upon our review of the record and the controlling statutory and case law recited herein,

---

fused to answer the question put to him by the trial court as to whether he had informed 880 and Bihlmire that his firm's withdrawal as counsel would necessitate 880's attendance at the December 5 scheduling conference.

we conclude that the trial court did not abuse its discretion by refusing to grant relief under sec. 806.07(1), Stats.[10]

Next, 880 contends that the trial court erred by granting the plaintiffs' motion for default judgment in the absence of any notice of motion for default judgment. 880 claims that under sec. 806.02(1), Stats., it was entitled to notice of motion for judgment.

880's reliance on sec. 806.02(1), Stats., is misplaced. Section 806.02(1) governs the granting of a default judgment *"if no issue of law or fact has been joined* and if the time for joining issue has expired. Any defendant appearing in an action shall be entitled to notice of motion for judgment."* (Emphasis added.) Here, however, the issue had been joined and the trial court had the authority to render a default judgment pursuant to sec. 802.10(3)(d), Stats.

In *Neylan v. Vorwald,* 124 Wis. 2d 85, 90, 368 N.W.2d 648, 652 (1985), the supreme court held that due process requires actual notice to the parties of a court's dismissal for failure to prosecute under sec. 805.03, Stats., because the statute imports no knowledge in advance to litigants of what is expected in prosecuting a case in a particular trial court to avoid dismissal consequences under sec. 804.12(2)(a), Stats. However, the court held that sec. 805.03 is sufficient notice to attorneys practicing in this state of the action

---

[10] Since we conclude that 880 was not entitled to relief from the default judgment because it failed to show that the judgment was a product of mistake, inadvertence, surprise or excusable neglect, we do not consider whether 880 had a meritorious defense. *See Hansher v. Kaishian,* 79 Wis. 2d 374, 389, 255 N.W.2d 564, 572 (1977).

which a court may take upon a party's failure to comply with statutes governing procedure in civil actions or to obey any order of a court. *Id.* at 93, 368 N.W.2d at 653; *Trispel,* 89 Wis. 2d at 736, 279 N.W.2d at 247. "Such conduct requirement is precise and ascertainable by a party and therefore subject to the sanctions of sec. 804.12(2)(a) . . . ." *Neylan* at 93, 368 N.W.2d at 653.

Finally, 880 contends that the trial court erred by awarding $280,000 in damages to the plaintiffs because there was no underlying evidentiary foundation in the record to support an award in that amount. Specifically, 880 claims there was no foundation for the expert testimony that the plaintiffs' damages totaled $280,000.

Section 806.02(5), Stats., provides that:

A default judgment may be rendered against any defendant who has appeared in the action but who fails to appear at trial. *If proof of any fact is necessary for the court to render judgment, the court shall receive the proof.* [Emphasis added.]

The circuit court has the prerogative to either hold a hearing or inquiry on damages, *see Hedtcke* at 478 n.5, 326 N.W.2d at 735, or to receive proof presented by affidavit of facts necessary to render judgment. *Martin,* 117 Wis. 2d at 445, 344 N.W.2d at 210. *See also Midwest Developers v. Goma Corp.,* 121 Wis. 2d 632, 651, 360 N.W.2d 554, 564 (Ct. App. 1984); 10 C. Wright, A. Miller & M. Kane, *Federal Practice and Procedure* § 2688 (1983).

Here, the circuit court held a hearing and determined that the plaintiffs sustained damages in the amount of $70,000 per condominium unit. This deter-

mination was based upon the testimony of the plaintiffs' expert, Jack Dabareiner, a real estate appraiser, who offered his expert opinion as to the dollar difference between the value of the four condominium units had they been fully completed and their value as they existed on that day. Dabareiner testified that he toured four of the condominium units in the complex and investigated the market data of current sales of condominium units on Lake Geneva. He opined that in the absence of the "indicated amenities that were to be included with the sale of each one of these units . . . boat slip for each unit, an in-ground pool, in-basement parking, and a cosmetic rehabilitation of the common areas of the condominium complex itself, the interior and attractive and cared for landscaping . . . it's my opinion that there's a loss in value of $70,000 per unit due to loss of the amenities." Dabareiner further testified that in its "as is condition" the condominium had a lake view "with very little else to offer."

On cross-examination, Dabareiner testified that he had not examined the condominium documents and had based his opinion as to what amenities were missing upon the word of one of the plaintiffs' attorneys. Further, he testified that he made certain assumptions about the features of the missing amenities and compared the "initial appeal" of the condominiums to other offerings available on Lake Geneva.

Section 907.03, Stats., provides in part: "The facts or data in the particular case upon which an expert bases an opinion or inference may be those perceived by or made known to him at or before the hearing." However, while the use of hypothetical questions as the basis for expert opinion is permissible, the hypothetical

questions must be based upon assumptions that have some support in the record. *Schulz v. St. Mary's Hospital,* 81 Wis. 2d 638, 652, 260 N.W.2d 783, 787 (1978). *See also Rennick v. Fruehauf Corp.,* 82 Wis. 2d 793, 808, 264 N.W.2d 264, 271 (1978).

The plaintiffs admit that Dabareiner's expert opinion was based upon the general allegations contained in the plaintiffs' amended complaint which alleges that 880 was to provide certain amenities under its purchase contracts with the plaintiffs, including boat slips, a swimming pool, parking and renovation of the common elements of the building.[11] Even assuming that the allegations of the complaint are deemed admitted, these general allegations are not specific enough to serve as the basis for an expert's opinion as to the amount of damages. Dabareiner testified that he had not examined the condominium documents and upon our review of the record, we have found no documents or other evidence more specific than the complaint to show what amenities were to be included with the condominiums purchased by the plaintiffs. In our view, proof of such facts was necessary in order for the circuit

---

[11] The amended complaint alleged, *inter alia,* as follows:

Defendant 880 Corporation has breached its purchase contracts with plaintiffs as they relate to the common elements by:
   (a)   failing to complete construction and/or renovation of the common elements of the building in the Condominium;
   (b)   failing to provide functional plumbing and heating within plaintiff's units;
   (c)   failing to provide storage areas to plaintiffs;
   (d)   failing to construct a parking garage and deliver parking spaces to plaintiffs;
   (e)   failing to construct an outdoor swimming pool as part of the common elements of the Condominium; and
   (f)   failing to construct a pier and provide boat slips to plaintiffs.

court to fix a damage amount and render a judgment. Because the record does not provide the underlying support for the amount of damages awarded, we reverse and remand for a new hearing on damages.

*By the Court.*—Judgment and orders affirmed in part; reversed in part and cause remanded for further proceedings.