Robert H. JOHNSON and Cheryl L. Johnson, Plaintiffs-Appellants,†

v.

ALLIS-CHALMERS CORPORATION, and Sperry Rand Corporation, Defendants-Respondents.

Court of Appeals

*No. 89-0649. Submitted on briefs December 8, 1989.—Decided March 15, 1990.*

(Also reported in 455 N.W.2d 657.)

†Petition to review granted.

For the plaintiffs-appellants the cause was submitted on the briefs of *John C. Albert* of *Brill & Eustice, S.C.* of Sun Prairie.

For the defendant-respondent Sperry Rand Corporation the cause was submitted on the brief of *Michael J. Gonring* of *Quarles & Brady* of Milwaukee.

For the defendant-respondent Allis-Chalmers Corporation the cause was submitted on the brief of *Bruce D. Huibregtse* and *Janice N. Bensky* of *Stafford, Rosenbaum, Rieser & Hanson* of Madison.

Before Eich, C.J., Dykman and Sundby, JJ.

EICH, C.J. Robert and Cheryl Johnson (collectively, "Johnson") appeal from a judgment and an order dismissing their products liability personal injury action against Allis-Chalmers Corporation and Sperry Rand Corporation for their failure to comply with the trial court's scheduling and discovery orders. The issue is whether the trial court abused its discretion in imposing

dismissal as a sanction for the violations. Because we see no abuse, we affirm the judgment and order.

The facts, while long in the telling, are not in serious dispute. In essence, they comprise a chronology. Robert Johnson was injured in a farm accident involving a tractor and bale handler on December 20, 1979. Just short of three years later, on December 17, 1982, he and his wife sued Allis-Chalmers, the manufacturer of the tractor, and Sperry Rand, the manufacturer of the bale handler, seeking to recover damages on grounds of strict liability and negligence.

During the first half of 1983 Sperry pursued discovery of various items which, after two motions and an order to compel compliance, was apparently completed by mid-August of that year.

On November 11, 1983, Allis-Chalmers served a demand for production of documents on Johnson. No response was forthcoming, although Johnson's counsel permitted Allis-Chalmers' attorney to inspect some materials. On December 5, 1983, Allis-Chalmers' attorney requested that Johnson respond to the demand. The request was renewed in writing on three separate occasions between January 5, 1984, and January 3, 1985, without any response from Johnson.

Following a pretrial conference on December 10, 1985, the court issued an order requiring Johnson to name expert witnesses and provide an itemization of special damages by February 1, 1986. Allis-Chalmers and Sperry were to name their expert witnesses by June 1, 1986, and all discovery was to be completed prior to a second pretrial conference scheduled for October, 1986. On February 3, 1986, two days after the deadline for Johnson's disclosure of experts and itemization of damages, Johnson submitted a list of thirteen names designated as "expert witnesses" and a statement of "non-

exclusive particulars as special damages." The latter document was a brief list of various categories of damage. Alongside each item was a dollar figure preceded by the phrase "at least . . .."

Between February 4 and April 9, 1986, Allis-Chalmers' counsel made five unsuccessful attempts to schedule a deposition of Johnson's liability expert. On April 9, Johnson's attorney indicated that he would not make the witness available until May 12, 1986—less than three weeks before the date on which Allis-Chalmers and Sperry were required to disclose their own experts. Consequently, both companies moved to extend their expert witness deadlines from June 1, 1986, to a date thirty days after Johnson produced his experts for deposition. The motion also requested an order directing Johnson to provide a specific itemized list of his special damages. The court heard the motion on April 17, 1986, and granted it by an order issued on June 18, 1986, but made effective as of April 22, 1986.

Among other things, the order required Johnson to: (1) provide the defendants, by May 5, 1986, with a list of all medical witnesses expected to testify at trial, together with "three alternative dates" (none later than June 30) on which they would be available for deposition; and (2) provide "specific information . . . for each . . . item of special damages" by May 15, 1986.

Johnson failed to comply with the order by the indicated dates. Then, on May 19, 1986, his counsel sent Allis-Chalmers' lawyer a letter setting deposition dates for five of the thirteen experts. No alternative dates were provided for several of the witnesses despite several requests by Allis-Chalmers' counsel in the ensuing months.

On November 5, 1986, Sperry and Allis-Chalmers filed motions seeking dismissal of the action for John-

son's failure to comply with the court's orders and applicable procedural statutes and rules. The motion asserted that the defendants still had received no response to Allis-Chalmers' November 11, 1983, demand for documents, nor any response to the court's order requiring more specific information regarding the claimed damages and a list of medical trial witnesses.

On July 13, 1987, the court issued a decision finding that Johnson had violated the prior orders. The court concluded, however, that "the sanction of dismissal . . . is at this point too drastic a sanction," and instead set a date for further hearing to compel discovery and to consider an award of reasonable attorney fees to Sperry and Allis-Chalmers. The hearing was adjourned to allow the parties to work matters out, which they apparently failed to do, and several more months passed with no response from Johnson to various orders. In March, 1988, Sperry again moved for dismissal.

Allis-Chalmers did not join in the motion because it had in the meantime filed for bankruptcy and further proceedings in this action had been stayed by the bankruptcy court.[1] After the hearing on Sperry's motion, but before a decision, Johnson provided both defendants with several hundred pages of documents purportedly dealing with his special damage claims. By this time, nearly two years had passed since the deadline for providing this information specified in the 1986 order.

On September 29, 1988, the trial court granted Sperry's motion to dismiss. The court began by noting that this was the second motion seeking dismissal for Johnson's failure to comply with the same discovery orders. Then, after discussing the purposes and policies

---

[1]During a portion of this time the parties apparently had agreed to hold discovery in abeyance pending ascertainment of Allis-Chalmers' status in the case.

underlying pretrial discovery and noting that "[t]wo scheduling orders have been breached by [Johnson] with no reason given or modification requested until the defendants brought their motion [to dismiss]," the court concluded:

> This court is reluctant to dismiss lawsuits for nominal technical reasons. It is loath to impose sanctions that have effects beyond those to counsel. There is a point, however, at which further tolerance regarding a parties [sic] actions cannot be extended.
>
> The actions of the plaintiffs have been neither nominal nor technical. They have been substantial and egregious and for which justification has not been provided.

On October 26, 1988, after the bankruptcy stay was lifted, Allis-Chalmers filed its own motion to dismiss for the same reasons set forth in Sperry's earlier motion. At about the same time, Johnson moved the court to reconsider the Sperry decision. At the hearing on the motions on January 20, 1989, Johnson provided the defendants with a formal response to Allis-Chalmers' November 11, 1983, request for production of documents.

At the conclusion of the hearing the court, noting that Allis-Chalmers was in the same position as Sperry had been when its dismissal motion was heard, granted Allis-Chalmers' motion to dismiss and denied Johnson's motion for reconsideration of the Sperry decision. On March 13, 1989, the court entered a written order confirming the oral decision. The court began by discussing its earlier findings that Johnson had failed to comply with the earlier orders and applicable procedural statutes and ruled that he had also violated the December 10, 1985, and April 22, 1986, orders relating to expert witness depositions and disclosure of special damages. Then, noting that Johnson had "failed to show a clear

and justifiable excuse" for the violations and had "made no attempt at any time to obtain an extension or modification of the . . . order[s]," the court directed entry of judgment dismissing the action against both defendants.

It is beyond dispute that trial courts have the authority to impose sanctions—including dismissal—for failure to prosecute, failure to comply with procedural statutes or rules, or for failure to obey pretrial discovery or scheduling orders. Secs. 805.03, 804.12(2)(a)3, and 802.10(3)(d), Stats. Whether sanctions are appropriate in the first instance and, if so, the choice of a particular sanction in a given case are matters within the court's discretion. "Thus, we examine . . . whether . . . the court abused its discretion in dismissing the appellant's complaint for failure to comply with the pre-trial orders . . .." *Trispel v. Haefer,* 89 Wis. 2d 725, 731, 279 N.W.2d 242, 245 (1979).

We will not reverse a discretionary determination if the record shows that discretion was in fact exercised and we can perceive a reasonable basis for the court's decision. *Prahl v. Brosamle,* 142 Wis. 2d 658, 667, 420 N.W.2d 372, 376 (Ct. App. 1987). The exercise of discretion requires something more than an unexplained choice between alternatives. *Argonaut Ins. v. LIRC,* 132 Wis. 2d 385, 391, 392 N.W.2d 837, 839 (Ct. App. 1986). The term contemplates a reasoning process considering the facts of record and leading to a conclusion a reasonable judge could reach. *Hartung v. Hartung,* 102 Wis. 2d 58, 66, 306 N.W.2d 16, 20–21 (1981). Where we can ascertain that the trial court has engaged in such a process, and the result is reasonable, we will affirm. Indeed, as a general rule we look for reasons to sustain a trial court's discretionary determination. *Prahl,* 142 Wis. 2d at 667, 420 N.W.2d at 376.

 Because dismissal is a harsh sanction for violation of procedural rules and orders, however, additional considerations come into play. Dismissal will be granted for failure to obey pretrial orders or to comply with procedural statutes and rules only in "extreme circumstances" or in cases of "egregious conduct." *Trispel,* 89 Wis. 2d at 732, 279 N.W.2d at 245. Finally, in order to demonstrate an abuse of discretion in the dismissal, Johnson must show "a clear and justifiable excuse" for his failure to comply with the court's orders. *Id.* at 734, 279 N.W.2d at 246.

The trial court dismissed Johnson's case for violation of two orders: one requiring him to disclose expert witnesses and specifically describe his special damages; and another requiring him to provide alternative dates for the defendants' deposition of his experts. In addition, it appears that he never made any formal response to Allis-Chalmers' request for documents until, over four years after the request, he was facing a second motion to dismiss.

In deciding the earlier motion to dismiss for Johnson's failure to comply with discovery rules and pretrial orders, the trial court agreed with Allis-Chalmers and Sperry that the violations had occurred. The court stated, however, that rather than dismiss the action it would instead award reasonable attorney fees to the defendants and allow Johnson a second chance to bring himself into compliance. The court's warning was clear, and we believe that Johnson's unexplained failure to take advantage of the reprieve under the circumstances of this case amounts to the kind of "extreme" or "egregious" conduct for which dismissal is an appropriate sanction.

Johnson argues, however, that it is an abuse of discretion to order dismissal in the absence of a showing by the defendants that "they have been unfairly affected in their ability to try the case," citing *Jenzake v. City of Brookfield,* 108 Wis. 2d 537, 545, 322 N.W.2d 516, 521 (Ct. App. 1982). In other words, he contends that the defendants must show prejudice in order to gain dismissal for violation of the pretrial orders. *Jenzake* was a case in which the plaintiff had "concealed" a witness—she failed to disclose an expert—and, relying on cases involving similar witness disclosure violations, we affirmed the trial court's denial of the motion to exclude the witness holding that it was not an abuse of discretion to do so where the moving party had not "request[ed] a continuance" or shown "how the concealment unfairly affects the party's ability to adequately try the case." *Id.* at 545, 322 N.W.2d at 521.

This case is something else altogether. It does not involve a violation easily "curable" by a continuance, as in *Jenzake.* Rather, it involves a failure to comply with discovery orders over a period of nearly five years, and in our opinion Johnson's actions implicate the court's ability to function as an adjudicative body. We believe the case is much more in line with *Furrenes v. Ford Motor Co.,* 79 Wis. 2d 260, 255 N.W.2d 511 (1977).

In *Furrenes,* the plaintiff sued Ford for injuries claimed to have been caused by a defectively designed tie rod in his automobile. When the plaintiff failed to produce the tie rod for inspection and testing by Ford, the company sought and obtained an order directing him to produce it. When compliance was not forthcoming, Ford moved to dismiss. As here, the trial court declined to dismiss and instead extended the production date with a warning that dismissal would follow if the extended deadline was not met. When it was not and, again as

here, when Ford filed a second motion to dismiss for failure to comply with the discovery order, the court granted the motion.

The supreme court upheld the dismissal relying primarily on *National Hockey League v. Metro. Hockey Club,* 427 U.S. 639 (1976), a case in which the United States Supreme Court sustained a dismissal where several of the defendant's interrogatories had remained substantially unanswered after seventeen months despite a court order directing that they be answered and despite extensions and admonitions by the trial court. *Id.* at 640. The *Furrenes* court, noting that the plaintiff had not sought an extension of time to comply with Ford's discovery request despite the trial court's "warning . . . that the consequence of noncompliance would be dismissal," saw no abuse of discretion, stating:

> If matters of expediting court proceedings and assuring proper and prompt administration of justice are to be more than mere matters on the agenda at judicial or bar association workshops, the lead of the nation's high court is to be followed in upholding dismissals on the merits where, as the trial court found in the *National Hockey League Case,* and we see in the case before us, there has been a "callous disregard of responsibilities" owed by plaintiff and plaintiff's counsel to the court and to the adversary parties. *Id.* at 267, 255 N.W.2d at 515.

We believe the same is true here. Johnson went through one hearing on a motion to dismiss for his failure to comply with the orders and the trial court, showing leniency, chose a lesser sanction than dismissal. To us, that is a "warning" indistinguishable from that given with somewhat greater specificity by the trial court in *Furrenes.* And, also as in *Furrenes,* Johnson never sought modification or extension of the orders. In such a

situation, we do not believe a defendant must show prejudice in order to prevail on a motion to dismiss.[2] It is enough that the integrity of the system and the court's ability to exercise its administrative and adjudicative functions in a reasonable manner are implicated by the culpable party's conduct. "It is considered well established that a court has the inherent power to resort to a dismissal of an action in the interest of orderly administration of justice. The general control of the judicial business before it is essential to the court if it is to function." *Latham v. Casey & King Corp.,* 23 Wis. 2d 311, 314, 127 N.W.2d 225, 226 (1964). "The dismissal of an action where counsel fails to comply with an important term of a pretrial order without justifiable excuse is not an extreme measure if the trial courts are to be encouraged to facilitate and expedite the trials of their cases." *Carlson Heating, Inc. v. Onchuck,* 104 Wis. 2d 175, 182, 311 N.W.2d 673, 677 (Ct. App. 1981).

Finally, Johnson asserts that he should not be penalized for his attorney's failure to respond to the court's orders. He contends that an award of fees and costs against his attorney should suffice and that he should not suffer dismissal of his action for his lawyer's shortcomings. It is an argument that engenders some sympathy, as is evidenced in the dissenting opinion. But we do not believe it should control.

---

[2]Even so, there was evidence of prejudice. In support of its motion to dismiss, Allis-Chalmers submitted an affidavit indicating that since the time of Johnson's accident some nine years earlier its tractor plant had been closed and all employees, including several engineers expected to testify at trial, had retired or moved away, and all records regarding the design, testing and manufacture of the tractor involved in the accident were no longer in its custody or control.

Even where a litigant may be "blameless" in that he or she did not participate in the lawyers' decisions on discovery matters or lacked knowledge of the manner in which the lawyers proceeded, we would be reluctant to hold that, in all cases, the action should be allowed to continue with only some monetary sanctions against the lawyers.

First, we believe such a rule would nullify the provisions of various statutes and rules governing pretrial practice that permit the trial court, in the exercise of its discretion, to impose the sanction of dismissal for procedural violations—to say nothing of the many cases defining the court's inherent powers to control the efficient adjudication of cases coming before it. If remaining aloof from his or her attorney's conduct of the case will insure a party against any ill effects from such failures—if sanctions affecting the case itself, such as barring the testimony of undisclosed witnesses or prohibiting the introduction of evidence deliberately withheld from discovery, may never be imposed and we must rely instead on the imposition of costs against a party's lawyer as the sole means of ensuring compliance with court orders and procedural rules—then we agree with the assertion in Sperry's brief that such orders and rules would be "toothless," for they would be subject to avoidance by a simple claim that the party was personally unaware of his or her lawyer's actions. It is for this reason that "[p]arties are deemed bound by the acts of their attorneys and are considered to have 'notice of all facts, notice of which can be charged upon the attorney.' " *Gaertner v. 880 Corp.*, 131 Wis. 2d 492, 501, 389 N.W.2d 59, 63 (Ct. App. 1986), quoting *Link v. Wabash R. Co.*, 370 U.S. 626, 634 (1962) (citation omitted).

Second, a monetary sanction against the lawyer is no answer to a party whose ability to try the case has

been affected by the offending lawyer's conduct. As we have noted, there was evidence in this case that, in the years that passed as a result of Johnson's failure to comply with the discovery orders, Allis-Chalmers' plant had been closed and all its employees—many of whom would be witnesses in the case—had scattered. In addition, all of the records relating to the manufacture of the equipment involved in the accident were no longer in its possession or control. Where the party's ability to try the case is so implicated an award of motion costs is an inadequate remedy.

We realize, as the dissent suggests, that it is not always the most satisfactory answer to leave a party to malpractice or other remedies for counsel's actions, but on the facts of this case we cannot say that the trial court abused its discretion in deciding as it did.

*By the Court.*—Judgment and order affirmed.

SUNDBY, J. *(dissenting).* For the reasons expressed in my dissents in *Monson v. Madison Family Institute, et al.,* No. 89-0314 unpublished slip op. (Wis. Ct. App. March 15, 1990), and *Schneller v. St. Mary's Hospital Center, et al.,* 155 Wis. 2d 365, 455 N.W.2d 250 (Ct. App. 1990), I respectfully dissent.

I would remand this case to the trial court to determine: (1) the history of the Johnsons' and their counsel's dilatoriousness, including whether the delay was intentional, egregious and in bad faith; (2) the extent of the Johnsons' personal responsibility for the delay; (3) the defendants' contribution to the delay; (4) whether the Johnsons or their counsel were warned by the court that further delay could result in dismissal; (5) the prejudice to the defendants if the action is not dismissed; (6) the

harshness of a dismissal with prejudice; and (7) the effectiveness of other sanctions.

## I.

The trial court dismissed the Johnsons' action with prejudice pursuant to secs. 802.10(3)(d), 804.12(2) and 805.03, Stats. Section 802.10(3)(d) provides that, "Violation of a scheduling order is subject to s. 805.03." Section 805.03, empowers the trial court in which the action is pending to make such orders "as are just," for failure of any claimant to prosecute or failure of any party to comply with the rules of civil procedure or to obey any order of the court, including but not limited to orders authorized under sec. 804.12(2)(a). Section 804.12(2), permits the court in which an action is pending to make such orders with regard to failure to make discovery "as are just," including an order dismissing the action.

The Judicial Council Committee's Note to sec. 805.03, Stats., states:

> This section, generally based on Federal Rule 41(b), replaces s. 269.25. Because of the harshness of the sanction, a dismissal under this section should be considered appropriate only in cases of egregious conduct by a claimant. *See Link v. Wabash R. Co.,* 82 S. Ct. 1386, 370 U.S. 626, 8 L. Ed. 2d 734 (1962); *Latham v. Casey & King Corp.,* 23 Wis. 2d 311, 127 N.W.2d 225 (1964).

Wis. Stats. Ann. sec. 805.03 (West 1977).

Section 804.12, Stats., does not appear to be based on a federal rule of civil procedure, as is sec. 805.03, Stats. The Judicial Council Committee's Note to sec. 804.12 states: "This new section provides strong sanctions against parties resisting discovery. Any party who seeks to evade or thwart full and candid discovery incurs

357

the risk of serious consequences . . .." Wis. Stats. Ann. sec. 804.12 (West 1977).

Those "serious consequences" may include dismissal with prejudice. However, a finding of bad faith or a "callous disregard of responsibilities" is necessary to support dismissal on the merits for failure to make discovery. *Furrenes v. Ford Motor Co.,* 79 Wis. 2d 260, 255 N.W.2d 511 (1977). Dismissal for noncompliance with pretrial orders is appropriate only in cases of egregious conduct. *Englewood Apartments Partnership v. Grant & Co.,* 119 Wis. 2d 34, 349 N.W.2d 716 (Ct. App. 1984). *See also Dyson v. Hempe,* 140 Wis. 2d 792, 413 N.W.2d 379 (Ct. App. 1987) (clients' failure, in legal malpractice action, to provide attorneys with divorce file as ordered by the trial court, did not, in and of itself, warrant sanction of dismissal; client's failure to comply with the order was not egregious, and if failure to timely provide attorneys with copies of the file made discovery more time-consuming and expensive, attorneys could move for some sanction other than dismissal, or for reasonable expenses caused by the failure).

A trial court may dismiss an action for failure to prosecute only if the claimant's conduct has been egregious or in bad faith. *Trispel v. Haefer,* 89 Wis. 2d 725, 732, 734, 279 N.W.2d 242, 245, 246 (1979).

Despite these stringent standards limiting the use of the extreme sanction of dismissal, the majority here holds that in order to demonstrate an abuse of discretion the Johnsons must show "a clear and justifiable excuse" for their failure to comply with the court's orders. The majority derives this standard from *Trispel,* 89 Wis. 2d at 733-34, 279 N.W.2d at 245-46.[1]

---

[1] I agree with the majority's conclusion, majority opinion at 351, that the standards of "extreme circumstances" and "egregious conduct" apply to motions to dismiss with prejudice for

The clear-and-justifiable-excuse standard was not derived from sec. 805.03, Stats., as *Trispel* would appear to hold, but from decisions applying sec. 269.25, Stats., which was discarded by the court when it adopted sec. 805.03. I conclude that the clear-and-justifiable-excuse burden which is imposed on a party aggrieved by the trial court's dismissal of his or her action, robs the egregious, bad faith, or callous disregard standards of any substance, except as bestowed by the grace of the trial court. An appellate court cannot give substance to these standards because appellate review is effectively barred by the insurmountable clear-and-justifiable-excuse standing barrier.

The clear-and-justifiable-excuse standing requirement was removed when the Wisconsin Supreme Court adopted sec. 805.03, Stats. S. Ct. Order, 67 Wis. 2d 585, 690, eff. Jan. 1, 1976. We now look to the decisions of the federal courts, to the extent that they show a pattern of construction, as persuasive authority in construing sec. 805.03, Stats., because that rule is based on federal rule 41(b). Clausen and Lowe, *The New Wisconsin Rules of Civil Procedure: Chs. 801–803,* 59 Marq. L. Rev. 1 (1976); *Neylan v. Vorwald,* 124 Wis. 2d 85, 99, 368 N.W.2d 648, 656 (1985). The federal decisions establish a clear pattern of construction of federal rule 41(b) as applied to motions to dismiss a claimant's action with

---

failure to timely comply with pretrial orders as well as motions to dismiss for failure to prosecute. The majority of the federal courts apply the same principles and standards to motions to dismiss for procedural violations as they apply to motions to dismiss for failure to prosecute. *See Dismissal for Failure to Attend Pretrial Conference and the Use of Sanctions at Preparatory Stages of Litigation,* 72 Yale L.J. 819 (1963), and Comment, *Involuntary Dismissal for Disobedience or Delay: The Plaintiff's Plight,* 34 U. of Chi. L. Rev. 922 (1966–67).

prejudice. These decisions require trial courts to consider the factors I would have the trial court consider on remand. *See Monson v. Madison Family Institute, et al.,* No. 89-0314 unpublished slip op. at 26-27 (Wis. Ct. App. March 15, 1990) (Sundby, J., dissenting).

## II.

A review of the record convinces me that, regardless of the standard applied, the trial court should not have employed the extreme sanction of dismissal· against the Johnsons. The Johnsons had a property interest in their cause of action which was protected by the due process clause. *Logan v. Zimmerman,* 455 U.S. 422, 427 (1982). They could not be deprived of that property interest without evidence of no merit or bad faith. "If imposed solely for failure to obey court orders, without evidence warranting a finding of no merit or bad faith, the sanction of striking a pleading . . . denies due process of law." *Dubman v. North Shore Bank,* 75 Wis. 2d 597, 601, 249 N.W.2d 797, 799 (1977).

In its September 29, 1988 memorandum decision the trial court found: "The actions of the *plaintiffs* have been neither nominal nor technical. They have been substantial and egregious and for which justification has not been provided." (Emphasis added.) Mr. and Mrs. Johnson testified that they had provided their lawyers with all the materials that they were asked to provide. Mrs. Johnson, when asked whether she knew she had the right to change lawyers, responded: "You believe in your attorney, don't you, when you hire him and trust in him? . . ." She testified that they had many, many contacts with their attorneys in an effort to get the case tried. Mr. Johnson testified that he had considered changing attorneys but there had gotten to be too much involvement

with the case. The Johnsons consulted two other attorneys about a possible conflict of interest in continuing to have their attorneys represent them on the motions for sanctions. Ultimately, the lead attorney withdrew from the firm, and the firm continued to represent the Johnsons and made efforts to bring the case to trial. Therefore, the trial court's finding that the actions of the *plaintiffs* had been substantial and egregious is clearly erroneous. If the fault lay anywhere, it lay with the Johnsons' attorneys.

The trial court apparently believed that the Johnsons were required to accept personal responsibility for their attorneys' actions, even to the extent of suffering the extreme sanction of dismissal, although they were completely blameless. This is not the law. *See Paschong v. Hollenbeck,* 13 Wis. 2d 415, 423-24, 108 N.W.2d 668, 672-73 (1961) (generally, neglect, mistake, or omission of attorney is not imputed to the client). Dismissal is warranted only where the plaintiff bears some degree of responsibility for counsel's misconduct, *Dunbar v. Triangle Lumber and Supply Co.,* 816 F.2d 126, 128-29 (3rd Cir. 1987), or is personally culpable, *Snead v. Automation Industries, Inc.,* 102 F.R.D. 823 (D.C. Md. 1984). Although dismissal is a possible sanction for attorney misconduct, it is an extreme sanction which should be reserved for cases of contumacious conduct for which the plaintiff is in some manner responsible. *John v. State of Louisiana,* 828 F.2d 1129 (5th Cir. 1987). "[A] host of cases evidence a reluctance of the courts to bar a party from trial on the merits of his claim because of the errors of his legal representatives." Wright & Miller, *Federal Practice and Procedure: Civil,* sec. 2369, at 196 (1971) (footnotes omitted).

## III.

I further conclude that plaintiffs' counsel were not guilty of bad faith or egregious conduct. The record discloses that both the Johnsons' and Sperry's attorneys' used the discovery process to frustrate rather than facilitate discovery. This unfortunate condition was noted by the trial court in its memorandum decision of July 13, 1987, when the court considered motions by counsel for all parties for sanctions against the opposing parties for alleged failures to comply with discovery and scheduling orders. The court said: "Judging from the recent communications from the Court, counsel have been no more successful in developing this lawsuit in a civil and provident manner than they have in the past." The trial court strongly urged that the attorneys "in their own interest" consider and agree to a new scheduling order and disposition of the motion to compel discovery.

The minutes of the hearing of August 17, 1987 reveal that the attorneys did put on the record an agreement relative to experts and depositions. Unfortunately, that agreement does not appear in the record. The Johnsons' attorneys agreed, however, to adjourn for sixty days their motion to compel answers to their interrogatories.

Despite the Johnsons' counsel's alleged uncooperativeness, the defendants were able to take the depositions of numerous expert and lay witnesses, including the Johnsons' accident reconstruction expert, Mr. Johnson's treating physician, and employees of the Johnsons who presumably could contribute information as to the accident involving Mr. Johnson.

In its September 29, 1988 memorandum decision the trial court found that the information as to special damages provided by the Johnsons' counsel "was in

great measure of no value in determining what the plaintiff[s] [were] asking for and why." This finding is also clearly erroneous. Prior to the court's decision, over 1,400 pages of documents had been produced, some of which were introduced as exhibits in the depositions that the defendants took of the Johnsons' expert and lay witnesses. These included the Johnsons' documentation of their damage claims. At the time the trial court dismissed this action, the defendants were in possession of all the information they needed to defend against the Johnsons' case. It was not necessary to dismiss the action because of counsel's failure to make all of the Johnsons' expert witnesses available for discovery. The trial court could have refused to permit these witnesses to testify at trial.

All too frequently, personality differences between attorneys disrupt the progress of litigation and the innocent client suffers. I empathize with the trial court's attempts to mediate the conflicts between the attorneys which arose in this case. However, in the progress of litigation in this age, that seems to come with the territory. Nonetheless, when these unfortunate situations develop, the trial court must consider imposing sanctions which will protect the integrity of the pretrial procedure without depriving the innocent client of his or her cause of action. "[T]he appellate courts do not look favorably on dismissal with prejudice if there are lesser sanctions that vindicate the purpose of the rules and the desire to avoid court congestion. Thus dismissals with prejudice are often set aside." Wright & Miller, *supra,* sec. 2370, at 203 (footnotes omitted).

## IV.

For these reasons, I would reverse the judgment and remand the cause to the trial court to determine whether sanctions other than dismissal will protect the integrity of the judicial process without sacrificing the Johnsons' cause of action.