CENTRAL WHOLESALE CO. v. CHESAPEAKE & OHIO RAILWAY COMPANY.

CARRIERS—JOINT INSPECTION REPORT OF PERISHABLES—SUFFICIENCY OF NOTICE OF CLAIM.

Joint inspection report as to interstate shipments of fruit and vegetables, made by consignee and railroad perishable inspection agency, on which was noted that a loss had been suffered, but which made no formal or informal claim or demand upon delivering carrier for payment, filed within 5 days of receipt of each shipment, *held*, insufficient to constitute a notice of claim for loss, and where no other claim or demand was filed within 9 months after delivery, no recovery could be had.

---

REFERENCES FOR POINTS IN HEADNOTES
9 Am Jur, Carriers § 793 *et seq.*

Appeal from Wayne; Rashid (Joseph G.), J.  Submitted January 9, 1962.  (Docket No. 55, Calendar No. 48,881.)  Decided March 19, 1962.

Case by Central Wholesale Co., a Michigan corporation, against the Chesapeake & Ohio Railway Company, a Virginia corporation, for damage in transit to shipments of fruits and vegetables.  Judgment for defendant.  Plaintiff appeals.  Affirmed.

*Starr & Sachs* (*I. R. Starr,* of counsel), for plaintiff.

*John J. Holden,* for defendant.

BLACK, J.  This case presents the same question as was recently considered and decided in *Warren Alloy Co.* v. *Blair Transit Co.,* 363 Mich 358.  The facts, however, are decisively different.  In the *Warren Alloy Case* the plaintiff consignee, following joint signature of a corresponding inspection report, promptly wrote the defendant carrier that "We are filing a claim against your company for damages incurred in transit."  The letter referred to the report as showing "the extent of such damages." Here the plaintiff consignee did nothing, from and after like signature of a similar report, until expiration of some 2-1/2 years.  By that time the 9-month limitational period the parties had agreed upon— in the bill of lading—had run its legal course.

The present plaintiff consignee sued the present defendant carrier for damages arising from delivery to it, by the carrier at Flint, of certain carload shipments of vegetables and fruits which had been damaged or spoiled during transit.  We assume, from the time of year and nature of the shipments, that defendant was not the initial carrier and that each shipment originated in Florida or California.

The following allegation of plaintiff's declaration —which defendant admitted subject to its special defense of limitation—presents fully the factual background of the issue before us:

"That between the year December 26, 1951 and January 22, 1952, the defendant delivered to the plaintiff approximately 35 shipments in number under the terms and regulations above set forth and the terms and conditions of certain bills of lading consigned to the plaintiff as consignee of the shipper named therein, consisting of vegetables and fruits. That said shipment of fruits and vegetables were delivered to the defendant and/or its connecting carrier or carriers in good condition, but were received by the plaintiff in damaged and/or spoiled condition. Details of the nature and degree of damage on each shipment were heretofore presented and are fully within the knowledge of the defendant, its agents and representatives."

The case was submitted below and comes here on a carefully restricted stipulation of facts. No surrounding and possibly relevant circumstances affecting the issue, as in some of the authorities we are to consider, and no proof of custom or trade usage, have been made to appear. The parties manifestly desire a precedentially unconditional determination of the legal effect of the "joint report," portrayed later in this opinion, as constituting or not constituting the filing of a claim, in writing, within meaning of the limitational clause of section 2(b) of the uniform bill of lading. Said section 2(b) reads as follows:

"As a condition precedent to recovery, claims must be filed in writing with the receiving or delivering carrier, or carrier issuing this bill of lading, or carrier on whose line the loss, damage, injury or delay occurred, within 9 months after delivery of the property (or, in case of export traffic, within 9

months after delivery at port of export) or, in case of failure to make delivery, then within 9 months after a reasonable time for delivery has elapsed; and suits shall be instituted against any carrier only within 2 years and 1 day from the day when notice in writing is given by the carrier to the claimant that the carrier has disallowed the claim or any part or parts thereof specified in the notice. Where claims are not filed or suits are not instituted thereon in accordance with the foregoing provisions, no carrier hereunder shall be liable, and such claims will not be paid."

Now for the essential stipulated facts:

R. P. I. A. 20—Exceptions

## RAILROAD
## PERISHABLE INSPECTION AGENCY
### JOINT REPORT

Station___Flint, Mich._____ R. R.____PM___

Date___January 5, 1952_____ Hour___11:30 am

Car Initials and No.___PFE 47065_____

Commodity_____Cauliflower_____

Consignee_____CWGo_____

-4-erts 10s ⎱ slats broken, few spilling,
-6- "    11s ⎰ 15 to 20% torn or bruised hds
-10-B/o
-11-crates made good by Consignee.
-21-total

| CONSIGNEE | R. P. I. A. |
|---|---|
| C-W-L | G. A. Keirl. |
| | Dist.-Inspector |
| Per. Jerry | Per. |

Each of the shipments to plaintiff moved in interstate commerce under the uniform bill of lading. Within 5 days after the delivery of each shipment to plaintiff an inspection was made of the contents of each car. The inspection was made by a representative of the Railroad Perishable Inspection Agency, referred to in the record as the "R.P.I.A." The R.P.I.A. was created by and receives its financial support from a group of rail carriers, one being the defendant carrier.

The R.P.I.A. inspector made a report of his findings on R.P.I.A. form No. 20, called "joint report." Thirty-five such forms were filled out. Each bore the signature of the inspector and of plaintiff's representative. The parties agree that all 35 reports should be considered as having been received in evidence, and that one of them, reproduced in the margin, is to be considered for the purpose of making decision. Formal claims for reimbursement were made in writing by plaintiff against defendant on June 23, 1954. Defendant thereupon informed plaintiff, in writing, that it "could not honor the claims because they had not been filed within the 9-month period provided in section 2(b)" above.

To the above we note agreement of the parties that defendant was required by law to advise plaintiff of its refusal to pay if no claim or claims were timely filed under section 2(b); the reason being that the defendant carrier could not under Federal regulation waive the limitation. See to the point *Georgia, F. & A. R. Co.* v. *Blish Milling Co.*, 241 US 190, 197 (36 S Ct 541, 60 L ed 948) (considered later in this opinion).

The parties agree, as they did before the trial judge, that the sole question is whether such joint reports, signed as they were by agents of both consignee and carrier and "filed" within 5 days after deliveries to the consignee, constitute the filing of

"claims" in writing sufficient to toll the 9-month limitation specified in said section 2(b).

The issue was tried to the court and resulted in a carefully reasoned opinion by Judge Rashid. His conclusion was that the joint reports, standing alone as they do under the stipulation, lacked the essence of "claims" in that they did not, formally or otherwise, notify the defendant final carrier of a demand upon it for payment of the noted losses. Judgment for defendant entered accordingly. Plaintiff appeals.

Counsel for the parties have asked that we examine and then apply or reject, according to their divergent contentions, a number of cases wherein other courts have decided that like instruments or circumstances constitute or do not constitute the "filing" of "claims" sufficient to toll the limitational period. We proceed to do so, noting that the above cited *Blish Case,* considered last below, seems to be the praised authority from which all polemics flow.

*Lehigh Valley R. Co.* v. *State of Russia* (CCA 2), 21 F2d 396, 404. The court held the negligent carrier estopped to assert that the consignee's claim, as "filed," did not comply with the requirements of the bill of lading. It was shown that the consignee promptly "filed" what it did in accordance with the carrier's instructions after the latter had reported the loss to the consignee.

*Minot Beverage Company* v. *Minneapolis & St. Louis R. Co.* (D Minn), 65 F Supp 293. Following the loss consignee's agent wrote promptly to the carrier. His letter identified the shipment, indicated the contents and the points of shipment and destination, declared that the shipment was damaged, and recited that in a short time "claim will be filed" for the loss. This was held to be a "claim" within meaning of a like section 2(b) stipulation.

*Hopper Paper Co.* v. *Baltimore & Ohio R. Co.* (CCA 7), 178 F2d 179. The only semblance of a "claim" within the limitational period was a telegram from the carrier to the shipper advising that the shipment had been destroyed in a railroad accident. The court held that, the carrier having actual knowledge of the shipper's loss and its own liability, the provisions of section 2(b) needed no compliance.

*Insurance Co. of North America* v. *Newtowne Manfg. Co.* (CCA 1), 187 F2d 675. No claim in writing was made. On that account the court denied carrier liability, noting at the same time that the *Hopper Case* seemed out of line with other cases. *Newtowne* is known for its definition of what constitutes a claim "in writing" (p 681):

"Their presentation to the claim agent cannot be deemed a substantial compliance with the requirement of a claim 'in writing' which, at the minimum, we think, must be a written document, however informal in expression, indicating an intention on the shipper's part to claim reimbursement from the carrier for a loss asserted to have occurred in the past, and sufficiently identifying the shipment in question either on the face of the document or by reference to previous correspondence between the parties."

*Delphi Frosted Foods Corp.* v. *Illinois Central R. Co.* (CCA 6), 188 F2d 343. It was shown that the shipper neither gave nor attempted to give notice to any of the involved carriers. Instead it sought to employ the claims certain of its customers gave to the delivering carrier regarding the damaged condition of the subject goods upon arrival thereof. The court ruled (p 345):

"Notice to the delivering carrier was sufficient; but the assertion of damage by persons who had

contracted for some portion of the goods, title to which had not passed, persons who were not agents of the appellant, did not constitute such a claim as was required."

The court mentioned in passing that the *Hopper Case,* "As expressly stated in the opinion therein, * * * is based upon the peculiar facts of the case."

*Northern Pacific R. Co.* v. *Mackie* (CCA 9), 195 F2d 641. It was shown that an employee of the carrier inspected the shipment upon arrival and made a written report to the consignee; also to the carrier. The report noted certain damages—extent unknown —and that the consignee would call for a final inspection. The court held this did not satisfy the requirements of section 2(b), the *Hopper Case* notwithstanding.

*Delaware, L. & W. R. Co.* v. *United States* (SD NY), 123 F Supp 579. The consignee sent a letter to the plaintiff railroad enclosing a list of claimed damages. The court held this letter sufficient under section 2(b) of the bill of lading, saying (p 582):

"The plaintiff [carrier] could not have inferred that the letter was written for any purpose other than to give notice that a claim would be made."

*Loveless* v. *Universal Carloading Co.* (CCA 10), 225 F2d 637. It was shown that one of the carrier's warehousemen, after having inspected the shipment in question, noted the extent of the apparent damage upon a consignment memo and signed his name thereto. The carrier acknowledged—in writing— that the damages were sustained by carelessness in transit, and that a formal claim would be filed at some future date when the damages were ascertained. By a divided decision the court held this sufficient, concluding as follows (p 641):

"Such writing is nonetheless a claim 'in writing' within the purposes of section 2(b) simply because

it takes the form of an acknowledgment of the damages and the cause thereof in the hand of him who is to be held liable when the extent thereof is determined."

*B. A. Walterman Company* v. *Pennsylvania R. Co.* (CCA 6), 295 F2d 627. The carrier's agent made an inspection of the damaged shipment and made a written report, copies of which were sent to the plaintiff (consignee) and the initial carrier. The damaged goods were then sent to the consignor for repairs by the carrier with this notation: "Damaged in transit. Returned free for repairs." A written claim was not filed with the carrier until 15 months after delivery. The court, denying carrier liability, followed the reasoning of the *Delphi Case* (p 628) :

"Actual notice received by the carrier of the damaged condition of the goods does not excuse the filing of the written claim."

*Union Pacific R. Co.* v. *Denver-Chicago Trucking Co.,* 126 Colo 581 (253 P2d 437). The shipper relied upon the fact that, upon delivery, the damaged goods were inspected for it by the carrier. Its consequent contention was that a formal claim was unnecessary in order to comply with the "claim" requirement of the bill of lading. The court disagreed, saying (p 584) :

"It must be borne in mind that there is a marked distinction and difference between inspection for damage and an investigation to determine liability."

*Thayer* v. *Pacific Electric R. Co.,* 55 Cal 2d 430 (11 Cal Reptr 560, 360 P2d 56). It was shown that the carrier's agent filled out a standard form used for the inspection of damaged freight. At a later date the agent wrote (at the insistence of the shipper) this notation on the freight bill: "Damage on this shipment, 4/20/55 C. D. Hileman." The court held this sufficient as against the carrier's contention that

no "claim" had been timely filed. The court's conclusion (p 436):

"On the instant facts it appears that because of the combination of the inspection report, and the notation on the freight bill made on April 20, 1955, the defendant carrier did have written notice that the plaintiff intended to file a claim for damages to his grinding machine."

*Georgia, F. & A. R. Co.* v. *Blish Milling Co.*, 241 US 190 (36 S Ct 541, 60 L ed 948). Defendant railroad was the ultimate carrier of a carload of flour consigned from Indiana by the plaintiff milling company to a grocery company in Georgia. The carload arrived in damaged condition, whereupon the grocery company "turned the flour back to the railway company." The latter "retook possession of the car and unloaded it, and in a few days sold, as perishable property, a part of the flour alleged to be damaged" (selling the rest a short time later). A series of telegrams were exchanged between plaintiff and defendant, ending with a "final telegram," sent by plaintiff to defendant, reading:

"We will make claim against railroad for entire contents of car at invoice price. Must refuse shipment as we cannot handle."

Sued for plaintiff's loss, the defendant pleaded failure of the plaintiff to comply with this provision of the bill of lading:

"Claims for loss, damage, or delay must be made in writing to the carrier at the point of delivery or at the point of origin within 4 months after the delivery of the property."

The court held (p 198):

"In the preceding telegrams, which passed between the parties and are detailed by the State court in stating the facts, the shipment had been ade-

quately identified, so that this final telegram taken
with the others established beyond question the
particular shipment to which the claim referred and
was in substance the making of a claim within the
meaning of the stipulation,—the object of which was
to secure reasonable notice. We think that it suffi-
ciently apprised the carrier of the character of the
claim, for while it stated that the claim was for the
entire contents of the car 'at invoice price' this did
not constitute such a variance from the claim for the
value of the flour as to be misleading; and it is plain
that no prejudice resulted."

In addition to the foregoing see *Allen* v. *Board of
State Auditors,* 122 Mich 324 (47 LRA 117, 80 Am
St Rep 573), and *Dawlen Corp.* v. *New York Central
R. Co.,* 328 Mich 360.

In *Allen* this Court adopted the standard diction-
ary definition of "claim" (p 328):

" 'Claim' is defined to be 'a demand of a right or
alleged right; a calling on another for something due
or asserted to be due; as, a claim of wages for
services.' Century Dictionary."

In *Dawlen,* a case similar to the one at bar, we
referred to *Snyder* v. *King,* 199 Mich 345 (1 ALR
893), and held decisively that a letter, addressed by
the plaintiff consignee to the defendant railroad
concerning apparent loss of the shipment in ques-
tion, did not "include a demand for payment of
damages," citing *Douglas Shoe Co.* v. *Pere Mar-
quette R. Co.,* 241 Mich 297. Here is the ruling (p
362):

"Substantial compliance with the claim require-
ment is necessary, and a letter may suffice. *Snyder*
v. *King,* 199 Mich 345 (1 ALR 893). Yet a claim
within the provision of the bill of lading is more
than a notice of loss; it must include a demand for
payment of damages. *Douglas Shoe Co.* v. *Pere
Marquette R. Co.,* 241 Mich 297. The letter of

December 13, 1946, was only a request to trace the shipment and was not sufficient to constitute a claim."

Due consideration of these authorities constrains opinion that the trial judge was right and that his judgment should be affirmed. The joint report was no more than a notation of mutual agreement that a loss had been suffered. It lacked, however, the very essence of a "claim," that is, a demand for payment, formal or informal. And it is unaided by extraneous circumstances, such as waiver of filing of a claim or, say, belief induced by the carrier that nothing further need be done. Instead, plaintiff's omission of "filing" any kind of claim or demand, continuing as noted above for more than 2 years, brings into play the critical nature and purpose of these limitational stipulations, given in *Blish* this way (p 196):

"The purpose of the stipulation is not to escape liability but to facilitate prompt investigation. And, to this end, it is a precaution of obvious wisdom, and in no respect repugnant to public policy, that the carrier by its contracts should require reasonable notice of all claims against it even with respect to its own operations."

Affirmed. Costs to defendant.

DETHMERS, C. J., and CARR, KELLY, KAVANAGH, SOURIS, OTIS M. SMITH, and ADAMS, JJ., concurred.