Robert H. JOHNSON and Cheryl L. Johnson, Plaintiffs-Appellants-Petitioners,

v.

ALLIS CHALMERS CORPORATION and Sperry Rand Corporation, Defendants-Respondents.

Supreme Court

*No. 89–0649. Argued February 27, 1991.—Decided June 5, 1991.*

(Also reported in 470 N.W.2d 859.)

261

265

For the plaintiffs-appellants-petitioners there were briefs by *Michael J. Wyngaard* and *Wyngaard & Wilson,* Madison and oral argument by *John C. Albert* of *Brill & Eustice,* Sun Prairie.

For the defendant-respondent, Sperry Rand Corporation, there was a brief by *Michael J. Gonring, Margaret C. Kelsey* and *Quarles & Brady,* Milwaukee and oral argument by *Mr. Gonring.*

For the defendant-respondent, Allis Chalmers Corporation, there was a brief by *Bruce D. Huibregtse, Gila Shoshany* and *Stafford, Rosenbaum, Rieser & Hansen,* and oral argument by *Mr. Huibregtse.*

WILLIAM A. BABLITCH, J. Robert and Cheryl Johnson (the Johnsons) appeal from a court of appeals' decision which affirmed the circuit court's order dismissing their products liability personal injury action against Allis Chalmers Corporation (Allis Chalmers) and Sperry Rand Corporation (Sperry) for their failure to comply with the circuit court's scheduling and discovery orders. Because the Johnsons' conduct in failing to comply with the court's orders was egregious and without a "clear and justifiable excuse," we conclude that the circuit court did not abuse its discretion by dismissing the Johnsons' cause of action. In reaching this conclusion, we hold that dismissal may be imposed as a sanction regardless of whether the opposing party has been prejudiced by the delays in discovery and regardless of whether the party bears personal responsibility for the noncompliance of their attorney.

The facts of this case are not in serious dispute. We adopt the findings of fact made by the court of appeals

because our review of the record corroborates those findings and they were not challenged by the parties in their briefs to this court. Robert Johnson was injured in a farm accident involving a tractor and bale handler on December 20, 1979. Just short of three years later, on December 17, 1982, he and his wife sued Allis Chalmers, the manufacturer of the tractor, and Sperry, the manufacturer of the bale handler, seeking to recover damages on grounds of strict liability and negligence.

During the first half of 1983 Sperry pursued discovery of various items which, after two motions and an order to compel compliance, was apparently completed by mid-August of that year.

On November 11, 1983, Allis Chalmers served a demand for production of documents on the Johnsons. No response was forthcoming, although the Johnsons' counsel permitted Allis Chalmers' attorney to inspect some materials. On December 5, 1983, Allis Chalmers' attorney requested that the Johnsons respond to the demand. The request was renewed in writing on three separate occasions between January 5, 1984, and January 3, 1985, without any response from the Johnsons' attorneys.

Following a pretrial conference on December 10, 1985, the court issued an order requiring the Johnsons to name expert witnesses and provide an itemization of special damages by February 1, 1986. Allis Chalmers and Sperry were to name their expert witnesses by June 1, 1986, and all discovery was to be completed prior to a second pretrial conference scheduled for October, 1986. On February 3, 1986, two days after the deadline for the Johnsons' disclosure of experts and itemization of damages, the Johnsons' counsel submitted a list of thirteen names designated as "expert witnesses" and a statement of "non-exclusive particulars as special damages." The

latter document was a brief list of various categories of damage. Alongside each item was a dollar figure preceded by the phrase "at least."

Between February 4 and April 9, 1986, Allis Chalmers' counsel made five unsuccessful attempts to schedule a deposition of the Johnsons' liability expert. On April 9, the Johnsons' attorney indicated that he would not make the witness available until May 12, 1986—less than three weeks before the date on which Allis Chalmers and Sperry were required to disclose their own experts. Consequently, both companies moved to extend their expert witness deadlines from June 1, 1986, to a date thirty days after the Johnsons produced their experts for deposition. The motion also requested an order directing the Johnsons to provide a specific itemized list of their special damages. The court heard the motion on April 17, 1986, and granted it by an order issued on June 18, 1986, but made effective as of April 22, 1986.

Among other things, the order required the Johnsons to: (1) provide the defendants, by May 5, 1986, with a list of all medical witnesses expected to testify at trial, together with "three alternative dates" (none later than June 30) on which they would be available for deposition; and (2) provide "specific information . . . for each . . . item of special damages" by May 15, 1986.

The Johnsons failed to comply with the order by the indicated dates. Then, on May 19, 1986, their counsel sent Allis Chalmers' lawyer a letter setting deposition dates for five of the thirteen experts. No alternate dates were provided for several of the witnesses despite several requests by Allis Chalmers' counsel in the ensuing months.

On November 5, 1986, Sperry and Allis Chalmers filed motions seeking dismissal of the action for the

Johnsons' failure to comply with the court's orders and applicable procedural statutes and rules. The motion asserted that the defendants still had received no response to Allis Chalmers' November 11, 1983, demand for documents, nor any response to the court's order of April 22, 1986, requiring more specific information regarding the claimed damages and a list of medical trial witnesses.

On July 13, 1987, the court issued a decision finding that the Johnsons' counsel had violated the prior orders. The court concluded, however, that "the sanction of dismissal . . . is at this point too drastic a sanction," and instead set a date for further hearing to compel discovery and to consider an award of reasonable attorney fees to Sperry and Allis Chalmers. The hearing was adjourned to allow the parties to work matters out, which they apparently failed to do, and several more months passed with no response from the Johnsons' counsel to various orders. In March, 1988, Sperry again moved for dismissal.

Allis Chalmers did not join the motion because it had in the meantime filed for bankruptcy and further proceedings in this action had been stayed by the bankruptcy court.[1] After the hearing on Sperry's motion, but before a decision, the Johnsons' attorneys provided both defendants with several hundred pages of documents purportedly dealing with their special damage claims. By this time, nearly two years had passed since the deadline for providing this information specified in the 1986 order.

On September 29, 1988, the circuit court granted Sperry's motion to dismiss. The court began by noting

[1]During a portion of this time the parties apparently had agreed to hold discovery in abeyance pending ascertainment of Allis Chalmers' status in the case.

that this was the second motion seeking dismissal for the Johnsons' failure to comply with the same discovery orders. Then, after discussing the purposes and policies underlying pretrial discovery and noting that the "[t]wo scheduling orders have been breached by [the Johnsons] with no reason given or modification requested until the defendants brought their motion [to dismiss]," the court concluded:

> This court is reluctant to dismiss lawsuits for nominal technical reasons. It is loath to impose sanctions that have effects beyond those to counsel. There is a point, however, at which further tolerance regarding a parties' [sic] actions cannot be extended.
>
> The actions of the plaintiffs have been neither nominal nor technical. They have been substantial and egregious and for which justification has not been provided.

On October 26, 1988, after the bankruptcy stay was lifted, Allis Chalmers filed its own motion to dismiss for the same reasons set forth in Sperry's earlier motion. At about the same time, the Johnsons moved the court to reconsider the Sperry decision. At the hearing on both of these motions on January 20, 1989, the Johnsons' counsel provided the defendants with a formal response to Allis Chalmers' November 11, 1983, request for production of documents.

Cheryl Johnson testified at the hearing that she and her husband had promptly provided their attorneys with all requested materials and that they were unaware of the two motions to dismiss filed by the defendants until shortly after the second hearing. She stated that after the second hearing, an attorney for the firm told the Johnsons that the motions to dismiss were made because the Johnsons' case "had not been attended to." Cheryl Johnson further testified that they had consulted other

counsel concerning terminating their representation with the firm, but chose to remain with the firm after being advised that it would be difficult for a new firm to step into the case at such a late stage. The Johnsons also discussed malpractice actions against the firm.

At the conclusion of the hearing, the court, noting that Allis Chalmers was in the same position as Sperry had been when its dismissal motion was heard, granted Allis Chalmers' motion to dismiss and denied the Johnsons' motion for reconsideration of the Sperry Decision. On March 13, 1989, the court entered a written order confirming the oral decision to dismiss the action with prejudice pursuant to secs. 802.10(3)(d),[2] 804.12(2),[3] and

[2] **802.10 Calendar Practice . . ..** (3)(d) *Sanctions.* Violation of a scheduling order is subject to s. 805.03.

[3] **804.12 Failure to make discovery; sanctions . . ..** (2) FAILURE TO COMPLY WITH ORDER. (a) If a party or an officer, director, or managing agent of a party or a person designated under s. 804.05(2)(e) or 804.06(1) to testify on behalf of a party fails to obey an order to provide or permit discovery, including an order made under sub. (1) or s. 804.10, the court in which the action is pending may make such orders in regard to the failure as are just, and among others the following:

1. An order that the matters regarding which the order was made or any other designated facts shall be taken to be established for the purposes of the action in accordance with the claim of the party obtaining the order;

2. An order refusing to allow the disobedient party to support or oppose designated claims or defenses, or prohibiting the disobedient party from introducing designated matters in evidence;

3. An order striking out pleadings or parts thereof, or staying further proceedings until the order is obeyed, or dismissing the action or proceeding or any part thereof, or rendering a judgment by default against the disobedient party;

4. In lieu of any of the foregoing orders or in addition thereto, an order treating as a contempt of court the failure to obey any orders except an order to submit to a physical or mental examination.

(b) In lieu of any of the foregoing orders or in addition thereto,

805.03,[4] Stats. The court began by discussing its earlier findings that the Johnsons had failed to comply with the earlier orders and applicable procedural statutes and ruled that they had also violated the December 10, 1985 and April 22, 1986 orders relating to expert witness depositions and disclosure of special damages. Then, noting that the Johnsons had "failed to show a clear and justifiable excuse" for the violations and had "made no attempt at any time to obtain an extension or modification of the . . . order[s]," the court directed entry of judgment dismissing the action against both defendants.

The court of appeals affirmed the circuit court's decision to dismiss the Johnsons' case, emphasizing that "Johnson's unexplained failure to take advantage of the reprieve under the circumstances of this case amounts to the kind of 'extreme' or 'egregious' conduct for which dismissal is an appropriate sanction." *Johnson v. Allis-Chalmers Corp.*, 155 Wis. 2d 344, 351, 455 N.W.2d 657 (1990).

---

the court shall require the party failing to obey the order or the attorney advising the party or both to pay the reasonable expenses, including attorney's fees, caused by the failure, unless the court finds that the failure was substantially justified or that other circumstances make an award of expenses unjust.

[4] **805.03 Failure to prosecute or comply with procedure statutes.** For failure of any claimant to prosecute or for failure of any party to comply with the statutes governing procedure in civil actions or to obey any order of court, the court in which the action is pending may make such orders in regard to the failure as are just, including but not limited to orders authorized under s. 804.12(2)(a). Any dismissal under this section operates as an adjudication on the merits unless the court in its order for dismissal otherwise specifies for good cause shown recited in the order. A dismissal on the merits may be set aside by the court on the grounds specified in and in accordance with s. 806.07. A dismissal not on the merits may be set aside by the court for good cause shown and within a reasonable time.

## I.

The sole issue presented in this case is whether the circuit court abused its discretion by dismissing the plaintiffs' lawsuit.

A circuit court's decision to dismiss an action is discretionary, and will not be disturbed unless the party claiming to be aggrieved by the decision establishes that the trial court has abused its discretion. *Taylor v. State Highway Comm.*, 45 Wis. 2d 490, 173 N.W.2d 707 (1970). A discretionary decision will be sustained if the circuit court has examined the relevant facts, applied a proper standard of law, and, using a demonstrated rational process, reached a conclusion that a reasonable judge could reach. *Loy v. Bunderson*, 107 Wis. 2d 400, 414–15, 320 N.W.2d 175 (1982). The question is not whether this court as an original matter would have dismissed the action; it is whether the circuit court abused its discretion in doing so. *See National Hockey League v. Met. Hockey Club*, 427 U.S. 639, 642 (1976). Dismissal, however, is an abuse of discretion if the aggrieved party can establish "a clear and justifiable excuse" for the delay. *Trispel v. Haefer*, 89 Wis. 2d 725, 733, 279 N.W.2d 242 (1979).

Because the record confirms the circuit court's finding that the plaintiff's conduct in failing to obey the court's orders was egregious and without "a clear and justifiable excuse," we hold that the circuit court did not abuse its discretion by dismissing the Johnsons' action.

The circuit court has both statutory authority, through secs. 802.10(3)(d), 805.03, and 804.12(2)(a)3, Stats., and inherent authority to sanction parties for failure to prosecute, failure to comply with procedural

statutes or rules, and for failure to obey court orders. *Neylan v. Vorwald,* 124 Wis. 2d 85, 94, 368 N.W.2d 648 (1985); *Taylor,* 45 Wis. 2d at 494; *Latham v. Casey & King Corp.,* 23 Wis. 2d 311, 314–15, 127 N.W.2d 225 (1964). Among the sanctions the circuit court may impose under sec. 804.12, Stats., are "imprisonment for contempt, an order that designated facts be taken as established, an order refusing the delinquent party the right to support or oppose designated claims or defenses, striking out pleadings or parts of pleadings, rendering judgment by default, dismissal of the action or of a claim therein, or assessment of expenses and attorneys fees." Judicial Council Committee's Note—1974 for sec. 804.12, Stats. The authority to impose sanctions is essential to the circuit court's ability to enforce its orders and ensure prompt disposition of lawsuits. *See Latham,* 23 Wis. 2d at 314.

Dismissal of an action is a particularly harsh sanction for a party's failure to obey discovery orders because it destroys the noncomplying party's property interest in his cause of action. Nevertheless, at both the state and federal levels, it is undisputed that under certain conditions the trial court must have authority to dismiss actions for a party's failure to comply with court orders. *See, e.g., National Hockey League,* 427 U.S. 639 (1976); *G–K Properties v. Redevelopment Agency, Etc.,* 577 F.2d 645 (1978); *Furrenes v. Ford Motor Co.,* 79 Wis. 2d 260, 255 N.W.2d 511 (1977); *see generally* Annotation, *Dismissal of State Court Action for Failure or Refusal of Plaintiff to Obey Request or Order for Production of Documents or Other Objects,* 27 A.L.R.4th 61 (1984).

The latitude circuit courts in Wisconsin have to dismiss actions as a sanction is demonstrated by sec. 805.03, Stats., which permits dismissal whenever a party

fails "to obey any order of the court." Although this language could be viewed as permitting dismissal for noncompliance with even trivial procedural orders, closer examination of the statute reveals that the court may only impose such orders "as are just." Furthermore, the Judicial Council Committee's Note—1974 to the statute emphasizes that "[b]ecause of the harshness of the sanction, a dismissal under this section should be considered appropriate only in cases of egregious conduct by a claimant." Our case law establishes that dismissal is improper, *i.e.* not "just," unless bad faith or egregious conduct can be shown on the part of the noncomplying party. *See, e.g., Trispel,* 89 Wis. 2d at 732; *Furrenes v. Ford Motor Co.,* 79 Wis. 2d at 267–69.

Our analysis in *Trispel* is illustrative of the approach the courts of this state must apply when reviewing the circuit court's exercise of discretion in dismissing an action. In *Trispel,* 89 Wis. 2d at 732, we held that under sec. 805.03, Stats., dismissal was a sanction that should rarely be granted and which was only appropriate in cases of egregious conduct. We also stated that "in order to demonstrate that a dismissal order based upon the failure to prosecute was an abuse of discretion, the aggrieved party must show 'a clear and justifiable excuse' for the delay." *Id.* at 733. (Citation omitted.) Dismissal was found to be appropriate in *Trispel* because the plaintiff had failed to comply with a pre-trial order to produce a medical report within the time set by the court and he had failed to inform the court or opposing parties of the reasons for the failure until the hearing on the motion to dismiss three months after the date set for production of the reports. *Id.* at 738. We concluded that under these circumstances the trial court had not abused its discretion in dismissing Trispel's case.

275

*Trispel* indicates that the sanction of dismissal is within the court's discretion once a party has failed to comply with a court order and his conduct in failing to comply with the order is egregious. It also indicates that if the noncomplying party shows a "clear and justifiable excuse" for his conduct, then dismissal is improper. Wisconsin cases have consistently applied these requirements when reviewing the trial court's dismissal of an action. *See, e.g., Englewood Apartments Partnership v. Grant & Co.,* 119 Wis. 2d 34, 349 N.W.2d 716 (Ct. App. 1984); *Rupert v. Home Mut. Ins. Co.,* 138 Wis. 2d 1, 405 N.W.2d 661 (Ct. App. 1987); *Prahl v. Brosamle,* 142 Wis. 2d 658, 420 N.W.2d 372 (Ct. App. 1987).

*Trispel,* 89 Wis. 2d at 733, however, may be somewhat ambiguous in its directive that, to demonstrate an abuse of discretion, the aggrieved party "*must* show 'a clear and justifiable excuse.' " (Emphasis added.) Although it clearly is an abuse of discretion for the circuit court to order dismissal when the noncomplying party has "a clear and justifiable excuse" for its delay, the nominal nature of some violations of court orders may make dismissal inappropriate despite the lack of a clear and justifiable excuse. Accordingly, the reviewing court must consider whether there was a reasonable basis for the circuit court's determination that the party's conduct in failing to comply with a court order was egregious, even if there may not be a clear and justifiable excuse. *See Dyson v. Hempe,* 140 Wis. 2d 792, 800–01, 413 N.W.2d 379 (Ct. App. 1987).

Therefore, under our current case law, we will sustain the sanction of dismissal if there is a reasonable basis for the circuit court's determination that the noncomplying party's conduct was egregious and there was

no "clear and justifiable excuse" for the party's noncompliance. Once these factors are established, it is within the circuit court's discretion to dismiss the action.

Under these standards, there was no abuse of discretion by the circuit court in dismissing the Johnsons' cause of action. The sanctions were imposed for egregious noncompliance with court orders for which there was no clear and justifiable excuse. It is also apparent from the record that the circuit court properly exercised its discretion by examining the relevant facts and applying the proper legal standards.

The Johnsons' attorneys failed to comply with the court's clear and unambiguous orders of December 10, 1985, and April 22, 1986. The first order required them to specify special damages. After the plaintiffs provided insufficient information regarding those damages, the second order required them to provide more specific information by May 15, 1986, regarding each of their special damages. The second order also required the Johnsons to disclose by May 5, 1986, their expert witnesses and provide three alternative dates when the experts would be available to be deposed by the defendants. The defendants never received complete information regarding the expert witnesses and the information regarding special damages was not provided until May 5, 1988, nearly two years late and after the hearing for the second motion to dismiss.

These facts present an adequate basis to sustain the circuit court's finding that the Johnsons' conduct in failing to comply with the discovery orders was "substantial and egregious." As the circuit court emphasized, the Johnsons provided no reasons for their failure to comply with the court's orders and they never requested modification of the court's orders. The circuit court warned the Johnsons' attorneys in its order denying the first motion

to dismiss that they had violated the court's orders. The court also scheduled a hearing to award attorney fees for that violation. Despite the warning of the court and the threat of monetary sanctions, however, the Johnsons' attorneys failed to avail themselves of the additional time they were given to comply with the court's orders.

The Johnsons' delay in failing to comply with the discovery order was well over two years. More than a year had passed since they had been warned that this failure to obey the discovery order was a proper subject of sanctions. Considering the length of time which had passed since the court's orders, the generous opportunity given to the Johnsons to comply, the court's earlier attempt to compel compliance through lesser sanctions, the persistent attempts of the defendants to obtain the information, and the failure of the Johnsons to seek a modification or extension of the orders, the circuit court did not abuse its discretion by finding that the plaintiffs' conduct was egregious.

We also conclude that the circuit court correctly found that there was no clear and justifiable excuse for the Johnsons' failure to comply with the court's orders. The primary excuse given by the Johnsons was that the defendants contributed to and acquiesced in any delays in complying with the court's orders. While the record does indicate that there was some disputes between the parties that were generated by personality differences, these differences do not excuse the Johnsons' failure to comply with the court's orders. The record indicates that the defendants, in contrast to the Johnsons, moved the court for modifications and extensions of orders when it appeared that they would not be able to comply with the court's orders. The two motions to dismiss and several motions to compel discovery filed by the defendants dis-

pel the Johnsons' suggestion that the defendants acquiesced to the delays.

The Johnsons also asserted that the delay was aggravated by an informal agreement between the parties to delay discovery while Allis Chalmers' status in the proceeding was determined by the bankruptcy court. This agreement is not on the record and the dates it may have been in effect are not provided. Regardless, the alleged agreement would not begin to account for the lengthy period in which the Johnsons failed to comply with the court's orders.

The circuit court's conclusion that the Johnsons' conduct in failing to obey its orders was egregious and without a clear and justifiable excuse was one that a reasonable judge could reach. In addition, the record indicates that the court properly exercised its discretion by examining the relevant facts and applying the proper legal standards. In denying the Johnsons' motion for reconsideration, the court elaborated on the factors it considered in reviewing the first and second motions to dismiss:

> I think, very honestly, that the first time the issue came before me, the statute allowed me to dismiss the matter and I didn't and I think that an evaluation perhaps of the factors of Mr. Perian and through Mr. Johnson was an accurate one that I was procrastinating to some extent and procrastinating in making that initial decision because of my feeling, as I expressed to everybody last December, that parties should not be held responsible for the problems with their lawyers.

These comments demonstrate that the circuit court understood that it did not have to dismiss the case once it determined that the Johnsons' conduct in failing to comply with the court's orders was egregious. The court

considered the entire record, including the fact that the Johnsons themselves were blameless for the noncompliance, but found dismissal was appropriate in light of the warning the Johnsons had received.

■■

We conclude that under the standards for dismissal traditionally applied in Wisconsin, the circuit court did not abuse its discretion by dismissing the plaintiff's action. The court had a rational basis for concluding that the Johnsons' conduct in failing to comply with the court's orders was egregious and without a "clear and justifiable excuse."[5]

## II.

The Johnsons urge this court, however, to adopt additional standards that would have to be met before a

---

[5]We also find that dismissal did not violate the Johnsons' constitutional rights of procedural due process and equal protection, which they raised in their initial briefs to this court. The due process issue is controlled by *Trispel,* 89 Wis. 2d at 736–37, in which we held that dismissal under sec. 805.03, Stats., did not violate due process because the statute provided sufficient notice to the attorney that the action could be dismissed for failing to comply with court orders. The Johnsons' claim is similarly without merit because they had sufficient notice of the potential consequences of their failure to obey court orders through secs. 804.12 and 805.03. The Johnsons acknowledged as much in their reply brief, stating that "upholding the result below likely works no unconstitutional deprivation." The Johnsons also abandoned their equal protection claim in their reply brief stating that, "[a]ny equal protection arguments are illustrative only, and not set forth as an independent ground of reversal; rather these illuminate the policy implications of upholding dismissal." We agree that no equal protection rights are implicated under the facts of this case.

circuit court imposed the sanction of dismissal against a party. First, they argue that this court should adopt a per se rule prohibiting dismissal of a noncomplying party's case absent a showing that the opponent's capacity to litigate the merits of the claim has been unfairly prejudiced by the delay. Second, they propose a per se rule prohibiting dismissal absent a showing that the party itself bears some responsibility for the failure of its attorney-representative to comply with the court's orders. The Johnsons contend that permitting dismissal for noncompliance when there is no evidence of prejudice to the opponent or of personal responsibility on the part of the litigant is neither just nor effective. Alternatively, they argue that we should remand this case to the circuit court for consideration of various factors relevant to the dismissal of an action.

The first rule that the Johnsons propose is that circuit courts should be prohibited from dismissing a cause of action unless the opposing party has been irreparably prejudiced by the delay in the case. The Johnsons claim that other sanctions, such as the awarding of costs, should be imposed absent prejudice because such a rule would compensate the adversary for delay, deter attorneys from disobeying court orders, and compel compliance with court orders, while still preserving the litigant's cause of action. The Johnsons argue that sanctions should be no more severe than necessary to cure any prejudice that results to the opponent and that, at the very least, dismissal is unwarranted until after all less severe sanctions have been exhausted.

The Johnsons' arguments fail to acknowledge the significant prejudice any flagrant disobedience of court orders causes to the circuit court's ability to efficiently and effectively administer judicial business. The court's authority to dismiss actions emanates not merely from a

need to prevent injustice to the parties in the particular action, but also from a need to prevent injustice to the operation of the judicial system as a whole. The circuit courts have a duty to discourage the protraction of litigation, preserve judicial integrity, and promote the orderly processing of cases. *Trispel,* 89 Wis. 2d at 733. Dismissal, in some instances, is necessary to maintain these interests. Each time the court's orders are disregarded, the administration of justice suffers because the court's time is misused to accommodate the noncomplying party's dilatoriness at the expense of the other party and all other litigants awaiting the court's attention. A continuing failure to sanction may be perceived by the noncomplying party and other litigants as a green light to flaunt court orders.

We conclude that the circuit court's discretion to dismiss a case should not be restricted by the establishment of a prejudice requirement. As we emphasized in *Furrenes,* 79 Wis. 2d at 267 (quoting *National Hockey League,* 427 U.S. at 642):

> 'There is a natural tendency on the part of reviewing courts, properly employing the benefit of hindsight, to be heavily influenced by the severity of outright dismissal as a sanction for failure to comply with a discovery order.'

> \* \* \* \*

> 'But here as in other areas of the law, the most severe in the spectrum of sanctions provided by statute or rule must be available to the District Court in appropriate cases, not merely to penalize those whose conduct may be deemed to warrant such a sanction, but to deter those who might be tempted to such

conduct in the absence of such a deterrent.' *Id.* at 643.

The Johnsons also urge this court to adopt a rule prohibiting dismissal when the failure to comply with court orders is due to counsel's conduct and the party himself bears no personal responsibility for his attorney's misconduct. The Johnsons argue that the egregious conduct of counsel should not be imputed to the innocent litigant to permit dismissal because monetary sanctions penalizing the attorney would more effectively deter attorney misconduct and compensate the adversary, while preserving the litigant's property interest in his cause of action. They claim that such a rule is more equitable because it recognizes that a party may not be aware of discovery abuse by his attorney and may not possess sufficient knowledge of the legal process to assess the effect of his attorney's conduct on his case.

We conclude that the plaintiffs' proposed rule, while facially appealing, is unworkable and would undermine the circuit court's ability to effectively administer judicial business for the same reasons as would an absolute rule requiring a showing of prejudice. The rule is unworkable because it would permit parties to avoid harsher sanctions by remaining detached from their attorney's handling of their lawsuit. Attorneys could strategically keep their clients uninformed of the progress of their litigation to avoid severe adverse consequences for evading discovery orders. As the defendants emphasize, the harsher sanctions would become "toothless" because they could be avoided by simply claiming that the party was personally unaware of their lawyer's actions.[6]

[6]One procedure that circuit courts may wish to consider utilizing in the earlier stages of litigation to inform the litigant

The United States Supreme Court in *Link v. Wabash Railroad Co.*, 370 U.S. 626, 633–34 (1962), recognized that the actions of a party's attorney in a civil action cannot be wholly separated from the client:

> There is certainly no merit to the contention that dismissal of petitioner's claim because of his counsel's unexcused conduct imposes an unjust penalty on the client. Petitioner voluntarily chose this attorney as his representative in the action, and he cannot now avoid the consequences of the acts or omissions of this freely selected agent. Any other notion would be wholly inconsistent with our system of representative litigation, in which each party is deemed bound by the acts of his lawyer-agent and is considered to have 'notice of all facts, notice of which can be charged upon the attorney.' (Cite omitted.)

■ Although Wisconsin courts may exercise their discretion in appropriate cases by not punishing litigants for their counsel's errors or misconduct, our cases establish that the litigant has no right to avoid the consequences of his attorney's conduct by disavowing the actions of counsel. *See Wagner v. Springaire Corp.*, 50 Wis. 2d 212, 184 N.W.2d 88 (1971); *Dugenske v. Dugenske*, 80 Wis. 2d 64, 257 N.W.2d 865 (1977); *Paschong v. Hollenbeck*, 16 Wis. 2d 284, 114 N.W.2d 221 (1962); *Gaertner v. 880 Corp.*, 131 Wis. 2d 492, 389 N.W.2d 59 (Ct. App. 1986). We have also stated our belief that the quality of legal representation is best maintained by refusing to overlook the effects of counsel's actions.

---

that his attorney's noncompliance may be jeopardizing his case is suggested in *Dunbar v. Triangle Lumber and Supply Co.*, 816 F.2d 126, 129 (1987). Under that procedure the clerk of court mails notice directly to the litigant of any scheduled hearing on a motion to dismiss.

*Dugenske,* 80 Wis. 2d at 70. Ultimately, when an attorney's egregious failure to obey court orders implicates the court's ability to administer judicial business, it is more equitable to allow the adverse consequences to fall upon the shoulders of the party who has chosen the attorney, rather than on the adversary and the other litigants who await their day in court.[7] In addition, the noncomplying party has a possible remedy in a malpractice action, particularly when the dismissal is entirely attributable to his attorney's conduct. *See Link,* 370 U.S. at 634 n.10; *Village of Big Bend v. Anderson,* 103 Wis. 2d 403, 308 N.W.2d 887 (Ct. App. 1981).

The circuit court recognized that it had discretion to refuse to impute the conduct of counsel to the Johnsons. The circuit court's order stating its reluctance "to impose sanctions that have effects beyond those to counsel," demonstrates that the court in fact exercised that discretion and decided that under these circumstances it was appropriate to dismiss the case, regardless of the Johnsons' lack of personal responsibility for the failure to comply with court orders.

---

[7]We note that other state courts have refused to relieve a party from a sanction imposed due to his counsel's neglect in failing to comply with discovery obligations. *See* Annotation, *Incompetence of Counsel as Ground for Relief From State Court Civil Judgment,* 64 A.L.R.4th 323, 395-98 (1988) (citing *Carroll v. Abbott Laboratories, Inc.,* 32 Cal. 3rd 892, 187 Cal. Rptr. 592, 654 P.2d 775 (1982); *Gayton v. Levi,* 146 Ill. App. 3d 142, 496 N.E.2d 1045 (1st Dist. 1986); *Baughn v. Rapidways Truck Leasing Co.,* 698 S.W.2d 618 (Mo. App. 1985); *Sargent Feed & Grain Co. v. Anderson,* 216 Neb. 421, 344 N.W.2d 59 (1984); *Vitale v. Elliott,* 120 R.I. 328, 387 A.2d 1379 (1978); *Agristor Credit Corp. v. Donahoe,* 568 S.W.2d 422 (Tex. Civ. App. 1978)).

We also conclude that it is unnecessary to enumerate a list of relevant factors that the circuit court must review on the record in each case. Several tests have been proposed. In *Rupert,* 138 Wis. 2d at 15, for example, the court of appeals noted that factors relevant to the blameworthiness of a party's conduct include: "to what extent a party has been prejudiced by another's failure to respond to discovery requests, to what extent another party has acquiesced in the discovery delays, whether another party has moved to compel discovery or to dismiss for failure to prosecute, and whether the case involves disobedience of a court order." The dissent in the court of appeals' decision in this case proposed a seven factor test.[8] Certainly all the factors enumerated in these various tests have some relevance to the question of whether a case should be dismissed. We believe, however, that a checklist approach requiring the circuit court to proceed step-by-step through each factor would tend to unduly emphasize the quantity of factors involved, rather than properly focusing on the degree to which the party's conduct offends the standards of trial practice. The circuit court should tailor its choice of sanction to the severity of the party's misconduct.

Our decision today evinces the faith we place in the circuit court's judgment when it imposes sanctions

[8]*See also Dunbar,* 816 F.2d at 128, requiring analysis of the following:

'(1) the extent of the *party's* personal *responsibility;* (2) the *prejudice* to the adversary caused by the failure to meet the scheduling orders and respond to discovery; (3) a *history* of dilatoriness; (4) whether the conduct of the party or the attorney was *willful* or in *bad faith;* (5) the effectiveness of sanctions other than dismissal, which entails an analysis of *alternative sanctions;* and (6) the *meritoriousness* of the claim or defense.'

286

against a party. We are confident that the circuit courts of this state will remain mindful that "the law prefers, whenever reasonably possible, to afford litigants a day in court . . .." *Dugenske,* 80 Wis. 2d at 68. We acknowledge that in some cases the need to punish and deter the flagrant disobedience of court orders requires the circuit court to impose greater sanctions than monetary ones. As we recognized in *Furrenes,* 79 Wis. 2d at 267, the sanction of dismissal must be utilized in extreme circumstances by the trial court "[i]f matters of expediting court proceedings and assuring proper and prompt administration of justice are to be more than mere matters on the agenda at judicial or bar association workshops . . .."

The Johnsons' conduct in failing to comply with the court's orders was egregious and without a clear and justifiable excuse. The circuit court was within its discretion imposing the sanction of dismissal under these circumstances. Therefore, we affirm.

*By the Court.*—The decision of the court of appeals is affirmed.

SHIRLEY S. ABRAHAMSON, J. (concurring). This case is one of many cases in the circuit and appellate courts involving the circuit court's pretrial dismissal of an action because of the attorney's dereliction of duty.[1] Punishment of litigants for the sins of counsel is thus not an unusual or isolated event.

---

[1]Two cases in addition to this case have been decided today. *See Daniel Schneller v. St. Mary's Hospital Medical Center,* 162 Wis. 2d 296, 470 N.W.2d 873 (1991) (sanction precluding naming witness constitutes effective motion to dismiss); *Monson v. Madison Family Institute,* 162 Wis. 2d 212, 470 N.W.2d 853 (1991). A petition for review before this court raises the same issue. *Barenz v. Stewart,* No. 90–2065–FT (decision of the court

In civil cases the principles of agency law as applied to the attorney-client relationship ordinarily require that a litigant is bound by the acts of counsel.[2] I conclude, however, that strict application of the rule that a litigant is bound by the acts of counsel is usually too harsh in a case of pretrial involuntary dismissal of an action with prejudice because of counsel's, not litigant's, neglect and disobedience of court orders.

The majority opinion makes no distinction between the conduct of the Johnsons and the conduct of their attorney. The majority opinion refers to the Johnsons and their attorney interchangeably and gives little weight to the Johnsons' argument that a circuit court should consider the personal fault of the litigants in a pretrial dismissal for the attorney's disobedience of court orders.

The majority relies on *Link v. Wabash R.R. Co.*, 370 U.S. 626 (1962), a 4–3 United States Supreme Court decision which has been criticized by commentators for

---

of appeals filed February 20, 1991, affirming judgment of circuit court dismissing action).

Judge Sundby of the court of appeals calculated that since the adoption of the Rules of Civil Procedure the court of appeals has decided 24 cases involving failure to prosecute or to comply timely with a pretrial order, 20 of which resulted in the dismissal of the plaintiff's complaint. *Monson v. Madison Family Institute,* No. 89-0314, unpublished slip op. (Wis. Ct. App. March 15, 1990) (Sundby, J., dissenting op. pp. 23–24).

[2]This case falls within the broader subject of the appropriate allocation of decisionmaking between lawyer and client and the lawyer's obligation to keep the client informed. *See,* Mazor, *Power and Responsibility in the Attorney-Client Relation,* 20 Stan. L. Rev. 1120 (1968); Spiegel, *Lawyering and Client Decisionmaking: Informed Consent and the Legal Profession,* 128 U. Pa. L. Rev. 41 (1979).

its harshness to blameless litigants.[3] The majority holds that "[a]lthough Wisconsin courts may exercise their discretion in appropriate cases by not punishing litigants for their counsel's error or misconduct, our cases establish that the litigant has no right to avoid the consequences of his attorney's conduct by disavowing the actions of counsel." Majority op. at 284. Under the majority opinion, the circuit court may, in its discretion, but need not, consider that a litigant bears no personal fault for the delay in prosecuting the action.[4] I conclude that it is an abuse of discretion for a circuit court to impute counsel's conduct to the litigant without considering the personal fault of the litigant.[5]

---

[3]*See* Note, *Involuntary Dismissal for Disobedience or Delay: The Plaintiff's Plight,* 34 U. Chi. L. Rev. 922 (1967); Note, *Dismissal for Failure to Attend a Pretrial Conference and the Use of Sanctions at Preparatory Stages of Litigation,* 72 Yale L. J. 819 (1963); Note, *The Demise (Hopefully) of an Abuse: The Sanction of Dismissal,* 67 Cal. W.L. Rev. 438 (1971).

[4]In *Schneller v. St. Mary's Hospital Medical Center,* 162 Wis. 2d 296, 470 N.W.2d 873 (1991) (Abrahamson, J., dissenting.), the circuit court failed to consider the plaintiffs' lack of personal fault. The circuit court also refused to give the plaintiffs an opportunity to be heard personally to explain, according to their affidavits, that they had selected counsel carefully, had relied upon him, and had made frequent inquiry about discovery during the progress of the case.

[5]I would adhere to the rule this court announced in 1856, *Babcock v. Perry,* 4 Wis. 45 (*31) (1856), and followed in *Charlois Breeding Ranches v. Wiegel,* 92 Wis. 2d 498, 514, 285 N.W.2d 720 (1979), cases involving motions to vacate an order or judgment: "A court is not bound to impute to a client everything his lawyer does or omits to do . . .. Mistakes, ill advice, or other failures of a lawyer may constitute excusable neglect on the part of the client, when the client has acted as a reasonable and prudent person in engaging a lawyer of good reputation, has relied upon him to

In my opinion, several reasons justify the relaxation of the general rule that counsel binds a litigant in the context of a pretrial involuntary dismissal for counsel's disobedience of court orders.

One, as a practical matter, a layperson ordinarily cannot be expected to supervise his or her attorney through every pretrial phase of litigation. A litigant may make appropriate inquiry and be victimized by counsel. A layperson may have no reason to suspect problems with counsel simply because a lengthy period of time has passed since an action was filed. A long period often passes before cases reach trial. Justice Black said it well in his dissent in *Link v. Wabash R.R.:* "to impose the punishment for the lawyer's failure to prosecute on the plaintiff who . . . was simply trusting his lawyer to take care of his case as clients generally do" is to ignore "the practicalities and realities of the lawyer-client relationship." *Link v. Wabash R.R.,* 370 U.S. 626, 634, 646 (1962).

Two, the consequence for the blameless litigant whose case is dismissed is extraordinarily severe. The litigant never gets the opportunity for a trial on the merits. A malpractice suit against counsel is an unsatisfactory solution for both the litigant and the judicial system.

Three, the harm to the opposing party is ordinarily limited, and the opposing party can be compensated.

Four, the circuit court has other sanctions available to it short of dismissal of the litigant's case with

protect his rights, and has made reasonable inquiry concerning the proceedings . . .. In deciding whether to impute the negligence of the lawyer to the client, the trial court must exercise its 'equitable powers to secure substantial justice between the parties.' . . .. This discretion may or may not call for imputation, depending on the facts of each case." (Citations omitted.)

prejudice, the most severe sanction possible. Sanctions could be imposed on the lawyer personally.[6]

Five, while a circuit court's efforts to move the docket expeditiously are important, dismissing actions for counsel's failure to comply with court orders does not necessarily foster sound, speedy administration of justice.[7]

[6]The court might impose monetary sanctions on the attorney. *See* Note, *Why Not Fine Attorneys?: An Economic Approach to Lawyer Disciplinary Sanctions,* 43 Stan. L. Rev. 907 (1991) (advocates fines in discipline cases).

[7]Justice Black, joined by Chief Justice Warren in *Link v. Wabash R.R.,* emphasized the conflict between clearing the court dockets and giving justice to the parties:

> The Court seems to find some reason for holding that this plaintiff can be penalized without notice because of a program certain courts have adopted to end congestion . . .. It is of course desirable that the congestion on the court dockets be reduced in every way possible consistent with the fair administration of justice. But that laudable objective should not be sought in a way which undercuts the very purposes for which courts were created—that is, to try cases on their merits and render judgments in accordance with the substantial rights of the parties . . .. When we allow the desire to reduce court congestion to justify the sacrifice of substantial rights of the litigants in cases like this, we attempt to promote speed in administration, which is desirable, at the expense of justice, which is indispensable to any court system worthy of its name.
>
> Moreover it seems plain to me that . . . dismissing meritorious lawsuits is doomed to fail even in its misguided purpose of promoting speed in judicial administration. Litigants with meritorious lawsuits are not likely to accept unfair rulings of that kind without exhausting all available appellate remedies. Consequently, any reduction of trial court dockets accomplished by such dismissals will be more than offset by the increased burden on appellate courts . . ..
>
> It is true that by its ruling today the Court finally puts an end to this case and thus clears it from all federal dockets. But in view of the fact that the merits of the case have never been reached, I cannot believe that there should be much rejoicing at this fact. The end result of the procedures here has been that much time has been wasted and yet no justice has been done. I feel it highly regrettable

291

The federal third circuit court of appeals has adopted a procedure to protect litigants from attorneys' default, to protect opposing parties, and to prevent unnecessary delay. The third circuit court of appeals invoked its supervisory power to require federal trial courts to mail notice directly to the litigant of the time and place of a hearing on a motion to dismiss. This procedure, said the court, puts the litigant on notice of possible jeopardy to his or her legal interest while the litigant still has the opportunity to take appropriate action. The third circuit court of appeals has directed the federal trial courts to consider whether the litigant is personally at fault when ruling on a motion to dismiss.[8] The federal trial courts are encouraged to make findings supported by the record that the litigant personally bore some responsibility for the attorney's actions before dismissing for failure to prosecute.[9]

---

that the Court feels compelled to place its stamp of approval upon such procedures. *Link v. Wabash R.R.,* 370 U.S. 626, 648–49 (1962) (Black, J., dissenting).

*See also,* Statement of Justice Black and Justice Douglas on the Rules of Civil Procedure and the Proposed Amendments, 31 F.R.D. 617, 619 (1962), advocating that before dismissing a plaintiff's action for failure of the lawyer to prosecute, the trial court should be required to serve notice on the plaintiff personally.

[8]*Dunbar v. Triangle Lumber and Supply Co.,* 816 F.2d 126, 129 (3d Cir. 1987); *Comdyne I, Inc. v. Corbin,* 908 F.2d 1142, 1147–1149 (3d Cir. 1990); *Curtis T. Bidwell and Sons, Inc. v. International Fidelity Ins. Co.,* 843 F.2d 683, 693, n.19 (3d Cir. 1988); *Andrews v. Government of Virgin Islands,* 132 F.R.D. 405, 411 (D. Virgin Islands 1990); *Carter v. Albert Einstein Medical Center,* 804 F.2d 805 (3d Cir. 1986).

[9]The court in *Dunbar* remanded the case for a hearing and determination on the dismissal, "[g]iven the absence of a finding with record support that Ms. Dunbar bore some responsibility for the flagrant actions of her counsel . . .." *Dunbar v. Triangle*

Judge Seitz wrote for a unanimous third circuit panel as follows:

> Defaults in professional obligations are a blight on the legal system and a betrayal of the privilege accorded the legal profession. We have therefore concluded that the growing scope of the problem and the responsibility of the courts to the general public require us to invoke our supervisory power in this area with respect to the district courts within this circuit.
>
> We conclude that any motion, whether by court or counsel, seeking an effective dismissal or default judgment based on an apparent default on the part of a litigant's counsel be pleaded with particularity and with supporting material and that where the papers demonstrate reasonable grounds for dismissal on that basis the court shall direct the clerk of the court to mail notice directly to the litigant of the time and place of a hearing on any such motion, reasonably in advance of the hearing date. We are confident that the district judges have the necessary remedies to prevent any abuse of this procedure.
>
> We think such a procedure will put the client on notice of possible jeopardy to his or her legal interests by counsel's conduct at a time when the client can take appropriate action . . ..

*Dunbar v. Triangle Lumber and Supply Co.,* 816 F.2d 126, 129 (3d Cir. 1987).

I favor adopting a similar procedure under this court's superintending power. Article VII, sec. 3, Wis. Const. A circuit court should notify the litigant of the time and place for a hearing on any motion to dismiss

*Lumber and Supply Co.,* 816 F.2d 126, 129 (3d Cir. 1987). *See also, Curtis T. Bidwell and Sons, Inc. v. International Fidelity Ins. Co.,* 843 F.2d 683, 693, n.19 (3d Cir. 1988).

before trial for counsel's disobedience of court orders.[10] In determining whether to dismiss the action the circuit court should not assume that a litigant is aware of and bound by the acts of counsel in the pretrial phase of litigation. The circuit court should consider the litigant's personal responsibility for and attempts to remedy the counsel's noncompliance in determining the appropriate sanctions and make appropriate findings on this issue on the record.

I join the mandate because I conclude that in this case the litigants, although blameless for the attorney's misconduct, themselves failed to act promptly when they became aware of the attorney's misconduct. While the circuit court was considering the defendants' motion to dismiss, the Johnsons learned of the motion to dismiss and of their attorney's failure to proceed with the case. For about four months the Johnsons failed to take any action to correct the matter. They failed, for example, to advise the circuit court of their position and of their disavowal of their attorney's conduct.[11] The circuit court's dismissal of the action with prejudice is an exercise of discretion. I affirm the dismissal in this case, as it is possible to hold the litigants in this case accountable for their own conduct.

---

[10]The circuit court already mails out notices in other pretrial matters. *See* Sec. 802.10(3)(a), Stats. 1989–90, which provides:

> **Calendar practice . . . (3)** (a) *Scheduling conference.* The court may on its own motion . . . call a scheduling conference upon at least 10 days written notice by mail to all attorneys of record and to all parties who have appeared of record and are not represented by counsel.

[11]Compare *Schneller v. St. Mary's Hospital Medical Center,* 162 Wis. 2d 296, 470 N.W.2d 873 (1991) (Abrahamson, J. dissenting).

For the reasons set forth, I concur in the mandate but do not join the opinion.